1  LYNNE C. HERMLE (STATE BAR NO. 99779)
   lchermle@orrick.com
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
3  Menlo Park, California  94025
   United States of America
4  Telephone:     +1-650-614-7400
   Facsimile:     +1-650-614-7401
5
6  JULIE A. TOTTEN (STATE BAR NO. 166470)
   jatotten@orrick.com
   DAVID A. PRAHL (STATE BAR NO. 233583)
7  dprahl@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
8  400 Capitol Mall, Suite 3000
   Sacramento, California  95814-4497
9  Telephone:     +1-916-447-9200
   Facsimile:     +1-916-329-4900

E-filing

10
   Attorneys for Defendant
11 LUXOTTICA RETAIL NORTH AMERICA INC., an
   Ohio Corporation
12

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15

16 JESSICA STAGNER, individually and on          Case No.  CV  11  2889  CW
   behalf of all other persons similarly situated,
17                                               **NOTICE OF REMOVAL UNDER 28
                   Plaintiff,                    U.S.C. §§ 1332, 1441, 1446 AND 1453**
18
            v.
19
   LUXOTTICA RETAIL NORTH AMERICA
20 INC., an Ohio Corporation;
   LENSCRAFTSERS, INC., an Ohio
21 Corporation,
22                 Defendant.
23
24
25
26
27
28

ORRICK, HERRINGTON &
   SUTCLIFFE LLP
   ATTORNEYS AT LAW

1    TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

2    CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:

3        PLEASE TAKE NOTICE that Defendant Luxottica Retail North America Inc., doing

4    business as LensCrafters (improperly sued as Lenscrafters, Inc.) ("Defendant"), removes the

5    above-captioned action from the Superior Court of the State of California in and for the County of

6    San Francisco to this Court pursuant to 28 U.S.C. Sections 1332 (d), 1441, 1446 and 1453 based

7    on the following grounds.

8                                    **BACKGROUND**

9        1.    On May 12, 2011, Plaintiff Jessica Stagner ("Plaintiff"), on behalf of herself and

10    others similarly situated, filed a Complaint against Defendant in the Superior Court of the State of

11    California, County of San Francisco, entitled *Jessica Stagner, individually and on behalf of all*

12    *others similarly situated, Plaintiff, v. Luxottica Retail North America, an Ohio Corporation;*

13    *Lenscrafters Inc., and Does 1-10, inclusive, Defendants*, Case No. CGC-11-510945 (the

14    "Complaint"). A true copy of the Complaint is attached to this notice as Exhibit A. The

15    allegations of the Complaint in the Action are incorporated by reference in this Notice of

16    Removal without necessarily admitting any of them.

17        2.    The Complaint purports to assert eight class-wide causes of action for relief

18    against Defendant stemming from Plaintiff's and putative class members' employment with

19    Defendant. Specifically, the Complaint alleges causes of action for: (1) failure to provide meal

20    periods and rest periods or compensation in lieu thereof in violation of California Labor Code

21    ("Labor Code") sections 226.7, 512 and California Industrial Welfare Commission ("IWC")

22    Wage Order 7-2001; (2) failure to furnish timely and accurate "wage and hour" statements in

23    violation of Labor Code sections 226(e) and 226.3; (3) failure to maintain employee time records

24    in violation of Labor Code section 1174(d); (4) unfair competition in violation of California

25    Business and Professions Code section 17200 *et seq.*; (5) failure to properly compensate

26    employees for all hours worked in violation of Labor Code sections 200, 226, 500, 510, 1197,

27    1198, and IWC Wage Order 2-2001; (6) failure to timely pay wages due at termination in

28    violation of Labor Code sections 201, 202 and 203; (7) misclassification of employees as exempt

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW

- 1 -

NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332,
1441, 1446 AND 1453

1   from California overtime requirements, in violation of IWC Wage Orders 4-2001 and 7-2001; and

2   (8) violation of Labor Code section 2698 *et seq.*, the California Private Attorney General Act of

3   2004 ("PAGA").

**TIMELINESS OF REMOVAL**

5   3.   The Complaint was filed on May 12, 2011, and served on May 13, 2011.

6   Therefore, this Notice of Removal is timely as it is filed within 30 days of the first receipt by

7   Defendant of a copy of the Summons and Complaint in this matter.  28 U.S.C. § 1446 (b).

8   4.   Defendant is informed and believes, and on that basis alleges, that there have been

9   no other named defendants in this case and that no other defendant, whether named or not, has

10  been served with or otherwise received the Complaint in the Action.

**DIVERSITY JURISDICTION UNDER CAFA**

12  5.   This action is removable under the Class Action Fairness Act of 2005 ("CAFA"),

13  codified at 28 U.S.C. § 1332 (d).  The Court has original jurisdiction of this action under Section

14  1332 (d) (2), and the action is removable pursuant to the provisions of 28 U.S.C. sections 1441 (a)

15  and 1453 as it is a class action in which at least one class member is a citizen of a state different

16  from that of the Defendant, the class size exceeds 100 members, and the amount in controversy

17  exceeds $5,000,000, exclusive of interest and costs.  Further, no defendant identified in the

18  Complaint is a state, officer of a state or a governmental agency.  28 U.S.C. § 1332 (d) (5).

**Diverse Citizenship of the Parties**

20  6.   **Plaintiff's Citizenship For Purposes of CAFA (28 U.S.C. § 1332 (d)).**   Plaintiff

21  is a resident of San Francisco, California.  Complaint, ¶ 1.  For diversity purposes, a person is a

22  "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesly Galleries, Ltd.*, 704 F.2d

23  1088, 1090 (9th Cir. 1983).  Residence is *prima facie* evidence of domicile.  *State Farm Mut.*

24  *Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).  Thus, Plaintiff is a citizen of California.

25  7.   **Defendant's Citizenship For Purposes of CAFA (28 U.S.C. § 1332 (d)).**  For

26  diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been

27  incorporated and of the State where it has its principal place of business."  28 U.S.C.

28  § 1332(c)(1).  The "principal place of business" is the state where the entity's officers direct,

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW

- 2 -

1  control and coordinate corporate activities, generally where it maintains its headquarters. *See The*

2  *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010) (adopting "nerve center" approach to

3  determine corporation's principal place of business).

4       8.    Defendant is now, at the time of filing the Complaint and at all times intervening,

5  an Ohio corporation. Declaration of Trent Renfrow ("Renfrow Decl.") ¶ 2. Defendant's principal

6  place of business is likewise currently (and since the filing of the Complaint has been) the State of

7  Ohio, where its officers direct, control and coordinate Defendant's activities and where it

8  maintains its headquarters. *Id.* Thus, Defendant is a citizen of Ohio for purposes of CAFA.

9  **Class Size**

10       9.    Plaintiff seeks to represent two distinct subclasses, including (1) a proposed

11  "Hourly Subclass" comprised of all persons employed in California in the positions of "Eyewear

12  Consultant[]," "Eye Care Associate[]," "In Store Sales Associate[]," or "In Store Sales

13  Specialist[]" from May 12, 2007 until the date of the filing of Plaintiff's complaint; and (2) a

14  proposed "Misclassification Subclass" comprised of all persons employed in California in the

15  position of "Sales Supervisor[]" from May 12, 2007 until the date of the filing of Plaintiff's

16  complaint.[1] Plaintiff alleges that the total number of potential class members exceeds one

17  thousand. Complaint, ¶ 12. Between May 12, 2007 and May 12, 2011, Defendant employed at

18  least 905 individuals as Eyewear Consultants in California and 217 individuals as Sales

19  Supervisors in California. Declaration of Peggy Mannix In Support Of Notice Of Removal

20  ("Mannix Decl[2].."), ¶¶ 4-5. Accordingly, Plaintiff's proposed class exceeds 100 persons.

21  

22  [1] Complaint, ¶10. Though Plaintiff fails to specify the employer of the members of the proposed subclasses, Defendant assumes for the purposes of this motion – without either admitting or acknowledging – that Plaintiff claims that Defendant is the employer of all such individuals. In addition, though Plaintiff's putative

23  "Misclassification Subclass" purports to include all of Defendant's "exempt" Sales Supervisors in California during the relevant time period, Defendant classifies all of its California employees working in the position of Sales

24  Supervisor as non-exempt from California overtime requirements. *See* Mannix Decl. ¶ 3. As a result, no individuals satisfy Plaintiff's definition of the alleged "Misclassification Subclass." Though Defendant has included the position

25  of Sales Supervisor in its calculations of the amount in controversy in this action where appropriate based on Plaintiff's claims, as set forth below the amount in controversy stemming from the position of Eyewear Consultant

26  alone easily exceeds the $5,000,000 removal threshold.

27  [2] Defendant does not utilize the position titles of "Eye Care Associate," "In Store Sales Specialist" or "In Store Sales Associate" for any of its employees in California. Mannix Dec., ¶3. As a result, all further references to the putative

28  "Hourly Subclass" shall refer solely to those members of the proposed "Hourly Subclass" (as that proposed class is defined by Plaintiff) who worked in the position of Eyewear Consultant.

**Amount in Controversy/Class Claims**

10.     Pursuant to CAFA, the alleged amount in controversy in this class action exceeds, in the aggregate, five million dollars ($5,000,000). 28 U.S.C. § 1332 (d) (6) (under CAFA, claims of individual class members are aggregated to determine if amount in controversy exceeds $5,000,000). The Complaint seeks to recover unpaid compensation for missed meal and rest periods and time worked "off the clock," as well as waiting time penalties. Complaint, ¶¶ 17, 23, 18, 20, 44, 48, 61, Prayer. In addition to alleging Labor Code violations, Plaintiff also seeks to recover these amounts under Business and Professions Code section 17200, which has a four-year statute of limitations pursuant to Business and Professions Code section 17208. Complaint, ¶¶ 35-39. Plaintiff further seeks to recover damages and statutory penalties for inaccurate itemized wage statements, as well as penalties for Defendant's alleged failure to maintain employee time records. Complaint, ¶¶ 19, 25-28, 29-33, Prayer. Plaintiff also seeks to recover penalties under PAGA, as well as attorneys' fees. Complaint, ¶¶ 62-64, 23, 51, 44, 51, Prayer. Notably, Plaintiff fails to allege an amount in controversy, and fails to otherwise allege whether the amount in controversy exceeds or does not exceed the threshold requirement for removal. As set forth below, however, the amount in controversy implicated by Plaintiff's class-wide allegations exceeds five million dollars.

11.     **Alleged Unpaid "Off The Clock" Wages:** The Complaint alleges that Defendant "failed and refused" to compensate Plaintiff and the putative class for all hours worked in the three-year period preceding the filing of the complaint (*i.e.* May 12, 2008 through May 12, 2011), thereby violating the California Labor Code.[3] In particular, the Complaint alleges that Defendant (1) had a "policy" of "regularly" requiring members of the putative "Hourly Subclass" to work "off the clock" for between "fifteen to thirty minutes" after they had punched out at the end of their shifts; and (2) similarly failed to compensate members of the putative "Misclassification Subclass" for such "off-the-clock" work based on their allegedly improper classification as

---

[3] Complaint ¶¶ 18, 20, 42-44. Note that while Plaintiffs' "unpaid compensation" cause of action invokes Labor Code section 510, which mandates the payment of overtime compensation, nowhere does Plaintiff allege that she or any putative class members in fact worked overtime hours. Accordingly, in the interest of being conservative for purposes of its removal-related calculations, Defendant has excluded any potential overtime liability, both in the form of compensation and/or penalties.

1  exempt from overtime requirements and the resulting fact that their time "is not recorded at all."[4]

2  Complaint, ¶¶ 18, 42-43. In addition to claiming that the putative class members' alleged "off the

3  clock" work violates the California Labor Code, Plaintiff claims that such work demonstrates

4  unfair competition in violation of Business and Professions Code section 17200 *et seq.*

5  Complaint, ¶ 36. As noted *supra*, an unfair competition claim is subject to a four-year statute of

6  limitations. Cal. Bus. & Prof. Code § 17208.

7       12.     For the period May 12, 2007 through May 12, 2011, Defendant's California

8  employees working in the position of Eyewear Consultant cumulatively worked at least 59,820

9  workweeks. Mannix Decl, ¶ 4. As of May 12, 2011, the average rate of pay for these employees

10  was $10.48 per hour. *Id.* Conservatively assuming – based on Plaintiff's allegations – that

11  Plaintiff and members of the putative "Hourly Subclass" worked 23 minutes of off-the-clock time

12  two days per week, Plaintiff's allegations would result in liability for unpaid compensation for

13  Plaintiff and the putative "Hourly Subclass" in the amount of $476,454 (59,820 Eyewear

14  Consultant workweeks times $10.48 per hour times .38 hour (23 minutes) times 2 days per week).

15  For the period May 12, 2007 through May 12, 2011, Defendant's California employees working

16  in the position of Sales Supervisor cumulatively worked at least 17,204 workweeks. Mannix

17  Decl, ¶ 5. As of May 12, 2011, the average rate of pay for these employees was $16.90 per hour.

18  *Id.* Conservatively assuming – based on Plaintiff's allegations – that members of the putative

19  "Misclassification Subclass" worked 23 minutes of off-the-clock time two days per week,

20  Plaintiff's allegations would result in liability for unpaid compensation for the putative

21  "Misclassification Subclass" in the amount of $220,968 (17,204 Sales Supervisor workweeks

22  times $16.90 per hour times .38 hour (23 minutes) times 2 days per week). Together, the total

23  potential liability for unpaid compensation for alleged off-the-clock work for the putative

24

25

26  [4] Complaint, ¶¶ 18, 42-43. Though Plaintiff styles this cause of action as proceeding on behalf of only the proposed "Hourly Subclass Members," Plaintiff alleges in the same cause of action that both proposed "Hourly Subclass"

27  members and proposed "Misclassification Subclass" members were not compensated for off-the-clock work. *See id.* In addition, Plaintiff vaguely alleges in the seventh cause of action that the "Misclassification Subclass" was "not

28  properly...paid for all hours they worked...." Accordingly, Defendant's calculations of potential "off-the-clock" liability factor in Defendant's potential exposure as to both of these subclasses.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW

NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332,
1441, 1446 AND 1453

1    subclasses would therefore be $697,422 ($476,454 + 220,968).[5]

2        13.    **Alleged Missed Meal Periods:** The Complaint alleges that Defendant has "a

3    policy of not allowing [proposed] Class Members to take meal periods...during their shifts," that

4    Defendant "routinely" failed to provide Plaintiff and the putative classes with a duty-free meal

5    period and/or a second meal period for time worked in excess of five and/or ten hours per day,

6    and that Defendant failed to compensate Plaintiff and the putative classes for missed meal periods

7    by paying them "premium pay." Complaint, ¶¶ 17, 22-23, 49. Plaintiff seeks to recover one hour

8    of pay for each day a meal period was not provided, which Plaintiff seeks to recover over a four-

9    year statute of limitations under Business and Professions Code section 17200 *et seq.* Complaint,

10    ¶ 22-23, 36.

11        14.    As discussed, during the period of May 12, 2007 through May 12, 2011,

12    Defendant's California employees working in the position of Eyewear Consultant cumulatively

13    worked at least 59,820 workweeks. Mannix Decl., ¶ 4. As of May 12, 2011, the average rate of

14    pay for these employees was $10.48 per hour. *Id.* Conservatively assuming that Defendant failed

15    to provide Plaintiff and the members of the putative "Hourly Subclass" at least two meal periods

16    per workweek, Plaintiff's allegations would result in meal period liability in the amount of

17    $1,253,827 (59,820 Eyewear Consultant workweeks times $10.48 per hour times two meal

18    periods per workweek). During the period of May 12, 2007 through May 12, 2011, Defendant's

19    California employees working in the position of Sales Supervisor together worked at least 17,204

20    workweeks. Mannix Decl., ¶5. As of May 12, 2011, the average rate of pay for these employees

21    was $16.90 per hour. *Id.* Conservatively assuming that Defendant failed to provide the members

22    of the putative "Misclassification Subclass" at least two meal periods per workweek, Plaintiff's

23    allegations would result in meal period liability in the amount of $582,712 (17,240 Sales

24    Supervisor workweeks times $16.90 per hour times two meal periods per workweek). Together,

25

26    [5] These calculations, and all other calculations set forth herein, are solely based on Plaintiff's Complaint in this
matter, and Defendant denies that it can or should be liable for any unpaid wages, unpaid premiums for meal or rest

27    periods, penalties for violations of Labor Code sections 203 and 226, PAGA penalties, or any other alleged damages
or penalties in this case. These calculations are being prepared solely for purposes of this removal, and nothing

28    contained herein is an express or implied admission that any of the allegations contained in the Complaint are true or
that Defendant is or should be liable for any amounts alleged therein or in the case generally.

1   the total potential liability for alleged missed meal periods would therefore be $1,836,539

2   ($1,253,827 + $582,712).

3       15.   **Alleged Missed Rest Periods:** The Complaint alleges that Defendant has "a

4   policy of not allowing [proposed] Class Members to take…rest periods during their shifts," that

5   Defendant "routinely" failed to provide, permit, or authorize Plaintiff and the putative classes to

6   take a minimum ten-minute rest period for every four hours or major fraction thereof worked, and

7   that Defendant failed to provide an hour of pay at the employee's regular rate for each workday a

8   rest period was not provided. Complaint, ¶¶ 17, 22-23, 49. Plaintiff seeks to recover one hour of

9   pay for each day a meal period was not provided, which Plaintiff seeks to recover over a four-

10  year statute of limitations under Business and Professions Code section 17200 *et seq.* Complaint,

11  ¶ 22-23, 36.

12      16.   As discussed, during the period of May 12, 2007 through May 12, 2011,

13  Defendant's California employees working in the position of Eyewear Consultant cumulatively

14  worked at least 59,820 workweeks. Mannix Decl, ¶ 4. As of May 12, 2011, the average rate of

15  pay for these employees was $10.48 per hour. *Id.* Conservatively assuming that Defendant failed

16  to provide Plaintiff and the members of the putative "Hourly Subclass" at least two rest periods

17  per workweek, Plaintiff's allegations would result in rest period liability in the amount of

18  $1,253,827 (59,820 Eyewear Consultant workweeks times $10.48 per hour times two rest periods

19  per workweek). During the period of May 12, 2007 through May 12, 2011, Defendant's

20  California employees working in the position of Sales Supervisor cumulatively worked at least

21  17,204 workweeks. Mannix Decl, ¶ 5. As of May 12, 2011, the average rate of pay for these

22  employees was $16.90 per hour. *Id.* Conservatively assuming that Defendant failed to provide

23  the members of the putative "Misclassification Subclass" at least two rest periods per workweek,

24  Plaintiff's allegations would result in rest period liability in the amount of $582,712 (17,240 Sales

25  Supervisor workweeks times $16.90 per hour times two rest periods per workweek). Together,

26  the total potential liability for alleged missed rest periods would therefore be $1,836,539

27  ($1,253,827 + $582,712).

28      17.   **Alleged Penalties Under Labor Code section 226:** The Complaint alleges that

1    Defendant failed to provide Plaintiff and the putative classes with timely and accurate itemized

2    wage statements as required by Labor Code section 226, and that Defendant is liable for damages

3    and statutory penalties. Complaint, ¶¶ 26, 28. Section 226 (e) provides for a penalty of $50 for

4    the initial pay period and $100 for each subsequent pay period in which a violation of Labor Code

5    section 226 is alleged to have occurred, up to a maximum of $4,000. As a penalty, recovery

6    under Section 226 is subject to a one-year statute of limitation. Cal. Civ. Proc. Code § 340;

7    *Campbell v. PriceWaterhouse Coopers*, 2008 WL 3836972, *6 (E.D. Cal. Aug. 14, 2008).

8         18.    Between May 12, 2010 and May 12, 2011, Defendant employed at least 405

9    individuals as Eyewear Consultants in California. Mannix Decl., ¶ 6. These Eyewear

10   Consultants all worked an initial pay period during this one-year period, and worked an average

11   of approximately 15 subsequent pay periods per Eyewear Consultant during this one-year period.

12   *Id.* Accordingly, Plaintiff seeks at least $627,750 under Section 226 as to the putative "Hourly

13   Subclass" (for each employee, $50 for the initial pay period plus $100 multiplied by 15

14   subsequent pay periods, to a maximum of $4,000). Between May 12, 2010 and May 12, 2011,

15   Defendant employed at least 76 individuals as Sales Supervisors in California. Mannix Decl.,

16   ¶ 7. These Sales Supervisors all worked an initial pay period during this one-year period, and

17   worked an average of approximately 20 subsequent pay periods per Eyewear Consultant during

18   this one-year period. *Id.* Accordingly, Plaintiff seeks at least $155,800 under Section 226 as to

19   the putative "Misclassification Subclass" (for each employee, $50 for the initial pay period plus

20   $100 multiplied by 20 subsequent pay periods, to a maximum of $4,000). Together, the total

21   potential liability for alleged penalties under Labor Code section 226 is $783,550 ($627,750 +

22   $155,800).

23        19.    **Waiting Time Penalties:**  Plaintiff also seeks recovery for penalties under

24   California Labor Code Section 203. Complaint ¶¶ 45-54. Labor Code section 203 provides for

25   30 days wages as a "waiting time" penalty for employers who willfully fail to pay wages in a

26   timely manner. Thus, as to all putative class members whose employment with Defendant

27   terminated at least 30 days ago, Plaintiff seeks 30 days of wages. Complaint, ¶ 51. A claim for

28   waiting-time penalties is subject to a three-year statute of limitations.  Cal. Lab. Code § 203;

1    *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1589, 2010 Cal. LEXIS 11678 (Cal. Sup. Ct. Nov.

2    18, 2010).

3        20.     Between May 12, 2008 and May 12, 2011, at least 424 individuals working for

4    Defendant as Eyewear Consultants in California left Defendant's employ. Mannix Decl., ¶ 8.

5    The average rate of pay for these employees at the time of separation was $9.84 per hour, which

6    equals a daily rate of $78.72 ($9.84 per hour times eight hours per day). *Id.* Thus, assuming that

7    Defendant unlawfully and willfully failed to timely pay these individuals their final wages within

8    30 days of their separation from Defendant, Plaintiff's claim for waiting time penalties as to the

9    putative "Hourly Subclass" would total approximately $1,001,318 (424 Eyewear Consultants

10   times $78.72 per day times 30 days). Between May 12, 2008 and May 12, 2011, at least 71

11   individuals working for Defendant as Sales Supervisors in California left Defendant's employ.

12   Mannix Decl., ¶ 9. The average rate of pay for these employees at the time of separation was

13   $15.32 per hour, which equals a daily rate of $122.56 ($15.32 per hour times eight hours per day).

14   *Id.* Thus, assuming that Defendant unlawfully and willfully failed to timely pay these individuals

15   their final wages within 30 days of their separation from Defendant, Plaintiff's claim for waiting

16   time penalties as to the putative "Misclassification Subclass" would total approximately $261,052

17   (71 Sales Supervisors times $122.56 per day times 30 days). Together, the total potential liability

18   for waiting time penalties is $1,262,370 ($1,001,318 + $261,052).

19        21.    **PAGA Penalties:** In her eighth cause of action, Plaintiff seeks the recovery of

20   penalties under PAGA for each alleged violation of the Labor Code asserted in the Complaint.

21   Complaint, ¶ 64. PAGA permits the imposition of a penalty for each asserted violation, per

22   employee, per pay period. *See generally* Cal. Lab. Code § 2699(a), (f)(2). Under PAGA, if the

23   underlying Labor Code provision alleged to have been violated provides a specific penalty,

24   PAGA permits recovery of that penalty (*See id.* § 2699(a)), or if no specific penalty is provided,

25   PAGA permits recovery of, *inter alia*, "one hundred dollars ($100) for each aggrieved employee

26   per pay period for the initial violation and two hundred dollars ($200) for each aggrieved

27   employee per pay period for each subsequent violation." *Id.*, § 2699(f)(2).

28        22.    Here, the Complaint alleges violations of the following Labor Code provisions,

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
    - 9 -
NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332,
1441, 1446 AND 1453

1   among others, that could support imposition of penalties under PAGA: 512 and 226.7 (meal

2   period violations); 512 and 226.7 (rest period violations); 226 (itemized wage statement

3   violations); and 1174(d) (failure to maintain employee time records).  Complaint ¶¶ 62-64, 22, 28,

4   30-33, Prayer for Relief.  Labor Code section 512 applies a penalty, as set forth in Labor Code

5   section 558, of fifty dollars ($50) for the first violation and one hundred dollars ($100) for any

6   subsequent violation, per pay period, per employee.  Labor Code section 226 carries the penalties

7   set forth in Labor Code section 226.3, which provides a penalty of two hundred fifty dollars

8   ($250) for the first violation and one thousand dollars ($1,000) for each subsequent violation, per

9   employee.  Labor Code sections 226.7 and 1174(d) do not carry their own penalty provisions, and

10   therefore the default PAGA penalty provision set forth in section 2699(f)(2) applies to violations

11   of these sections.

12   23.   PAGA penalties can be sought for "each pay period" within the statute of

13   limitation, which for PAGA claims is the one-year period set forth in California Code of Civil

14   Procedure section 340(a) ("An action upon a statute for a penalty or forfeiture, if the action is

15   given to an individual, or an individual and the state, except if the state imposing it prescribes a

16   different limitation").  Because Plaintiff's PAGA claim applies a one-year limitations period (see

17   Cal. Code Civ. Proc. § 340(a) ("An action upon a statute for a penalty or forfeiture, if the action is

18   given to an individual, or to an individual and the state . . .")), the relevant period for calculating

19   Plaintiff's alleged PAGA penalties is the year prior to the filing of Plaintiff's complaint – between

20   May 12, 2010 and May 12, 2011.

21   24.   *PAGA Meal Period Penalties.*  As noted in Paragraph 18, *supra*, between May 12,

22   2010 and May 12, 2011, Defendant employed at least 405 individuals as Eyewear Consultants in

23   California.  Mannix Decl., ¶ 6.  These Eyewear Consultants all worked an initial pay period

24   during this one-year period, and worked an average of approximately 15 subsequent pay periods

25   per Eyewear Consultant during this one-year period.  *Id.*  Accordingly, the total amount in

26   controversy for the alleged violation of Labor Code § 512 for unpaid meal period PAGA penalties

27   as to the proposed "Hourly Subclass" is $627,750 (($50 x 1 pay period x 405 employees) + ($100

28   x 15 subsequent pay periods x 405 employees)), and the total amount in controversy for the

1   alleged violation of Labor Code § 226.7 for unpaid meal period PAGA penalties as to the

2   proposed "Hourly Subclass" is $1,255,500 (($100 x 1 pay period x 405 employees) + ($200 x 15

3   subsequent pay periods x 405 employees)). As also noted in Paragraph 18, *supra*, between

4   May 12, 2010 and May 12, 2011, Defendant employed at least 76 individuals as Sales

5   Supervisors in California. Mannix Decl., ¶ 7. These Sales Supervisors all worked an initial pay

6   period during this one-year period, and worked an average of approximately 20 subsequent pay

7   periods per Eyewear Consultant during this one-year period. *Id.* Accordingly, the total amount in

8   controversy for the alleged violation of Labor Code § 512 for unpaid meal period PAGA penalties

9   as to the proposed "Misclassification Subclass" is $155,800 (($50 x 1 pay period x 76 employees)

10  + ($100 x 20 subsequent pay periods x 76 employees)), and the total amount in controversy for

11  the alleged violation of Labor Code § 226.7 for unpaid meal period PAGA penalties as to the

12  proposed "Misclassification Subclass" is $311,600 (($100 x 1 pay period x 76 employees) +

13  ($200 x 20 subsequent pay periods x 76 employees)). Together, the total potential liability for

14  alleged PAGA meal period penalties is $2,350,650 ($627,750 + 1,255,500 + $155,800 +

15  $311,600).

16      25.   *PAGA Rest Period Penalties.* As noted in Paragraph 18, *supra*, between May 12,

17  2010 and May 12, 2011, Defendant employed at least 405 individuals as Eyewear Consultants in

18  California. Mannix Decl., ¶ 6. These Eyewear Consultants all worked an initial pay period

19  during this one-year period, and worked an average of approximately 15 subsequent pay periods

20  per Eyewear Consultant during this one-year period. *Id.* Accordingly, the total amount in

21  controversy for the alleged violation of Labor Code § 512 for unpaid rest period PAGA penalties

22  as to the proposed "Hourly Subclass" is $627,750 (($50 x 1 pay period x 405 employees) + ($100

23  x 15 subsequent pay periods x 405 employees)), and the total amount in controversy for the

24  alleged violation of Labor Code § 226.7 for unpaid rest period PAGA penalties as to the proposed

25  "Hourly Subclass" is $1,255,500 (($100 x 1 pay period x 405 employees) + ($200 x 15

26  subsequent pay periods x 405 employees)). As noted above, between May 12, 2010 and May 12,

27  2011, Defendant employed at least 76 individuals as Sales Supervisors in California. Mannix

28  Decl., ¶ 7. These Sales Supervisors all worked an initial pay period during this one-year period,

1  and worked an average of approximately 20 subsequent pay periods per Eyewear Consultant

2  during this one-year period. *Id.* Accordingly, the total amount in controversy for the alleged

3  violation of Labor Code § 512 for unpaid rest period PAGA penalties as to the proposed

4  "Misclassification Subclass" is $155,800 (($50 x 1 pay period x 76 employees) + ($100 x 20

5  subsequent pay periods x 76 employees)), and the total amount in controversy for the alleged

6  violation of Labor Code § 226.7 for unpaid rest period PAGA penalties as to the proposed

7  "Misclassification Subclass" is $311,600 (($100 x 1 pay period x 76 employees) + ($200 x 20

8  subsequent pay periods x 76 employees)). Together, the total potential liability for alleged PAGA

9  rest period penalties is $2,350,650 ($627,750 + 1,255,500 + $155,800 + $311,600).

10     26.    *PAGA Wage Statement Penalties.* Based on the data described in Paragraph 18,

11 *supra,* pertaining to the putative "Hourly Subclass," the total amount in controversy under

12 Plaintiff's claim for wage statement PAGA penalties as to the putative "Hourly Subclass" is

13 $6,176,250 ((250 x 1 pay period x 405 employees) + ($1,000 x 15 subsequent pay periods x 405

14 employees). And based on the data described in Paragraph 18, *supra,* pertaining to the putative

15 "Misclassification Subclass," the total amount in controversy under Plaintiff's claim for wage

16 statement PAGA penalties as to the putative "Misclassification Subclass" is $1,539,000 (($250 x

17 1 pay period x 76 employees) + ($1,000 x 20 subsequent pay periods x 76 employees). Together,

18 the total potential liability for alleged wage statement PAGA penalties is $7,715,250 ($6,176,250

19 + $1,539,000).

20     27.    *PAGA Record Maintenance Penalties.* Based on the data described in

21 Paragraph 18, *supra,* pertaining to the putative "Hourly Subclass," the total amount in

22 controversy under Plaintiff's claim for record maintenance PAGA penalties as to the putative

23 "Hourly Subclass" is $1,255,500 (($100 x 1 pay period x 405 employees) + ($200 x 15

24 subsequent pay periods x 405 employees). And based on the data described in Paragraph 18,

25 *supra,* pertaining to the putative "Misclassification Subclass," the total amount in controversy

26 under Plaintiff's claim for record maintenance PAGA penalties as to the putative

27 "Misclassification Subclass" is $311,600 (($100 x 1 pay period x 76 employees) + ($200 x 20

28 subsequent pay periods x 76 employees). Together, the total potential liability for alleged record

1    maintenance PAGA penalties is $1,567,100 ($1,255,500 + $311,600).

2         28.    Thus, the total amount in controversy for all penalties sought through Plaintiff's

3    eighth cause of action alone, as set forth in Paragraphs 21 through 27, *supra*, would be

4    $13,983,650.

5         29.    Removal of this action is therefore proper as it is more likely than not that the

6    aggregate value of Plaintiff's claims – without attorneys' fees – is in excess of the $5,000,000

7    jurisdictional requirement. *See Guglielmino v. McKee Foods Corp.*, 506 F. 3d 696, 699, 700-701

8    (9th Circuit 2007) (preponderance of the evidence standard applies to Defendant seeking removal

9    where state court complaint is unclear or unambiguous as to whether the requisite amount in

10   controversy for removal is pled). *Also see Luckett v. Delta Airlines, Inc.*, 171 F. 3d 295, 298 (5th

11   Cir. 1999) (defendant may make requisite showing that amount in controversy exceeds

12   jurisdictional minimum by "affidavit").

| **Relief Sought By Plaintiff** | **Alleged Amount in Controversy** |
| --- | --- |
| Compensation for Unpaid "Off-The-Clock" Wages | $697,422 |
| Meal Period Premiums | $1,836,539 |
| Rest Period Premiums | $1,836,539 |
| Itemized Wage Statement Penalties | $783,550 |
| Waiting Time Penalties | $1,262,370 |
| PAGA Penalties | $13,983,650 |
| **TOTAL** | **$20,400,070** |

22        30.    **Attorney's Fees:** The Complaint also alleges that class members are entitled to

23   recover attorneys' fees. Complaint, ¶¶ 23, 51, 44, 51, Prayer. Requests for attorneys' fees must

24   be taken into account in ascertaining the amount in controversy. *See Galt G/S v. JSS*

25   *Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorney's fees to be

26   included in amount in controversy, regardless of whether award is discretionary or mandatory).

27        31.    Because diversity of citizenship exists – the Plaintiff and the putative class

28   members are citizens of the State of California and the Defendant is a citizen of the State of Ohio,

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW

- 13 -

NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332,
1441, 1446 AND 1453

1     because the class size exceeds 100 members, and because the amount in controversy exceeds five

2     million dollars, this Court has original jurisdiction of the action pursuant to 28 U.S.C. section

3     1332 (d) (2). This action is therefore a proper one for removal to this Court.

4                       **No Bases for Declining Jurisdiction Exists**

5         32.     There are no bases for this Court to decline jurisdiction. CAFA permits a district

6     court to decline to exercise its jurisdiction only in specified instances where a primary defendant

7     is a citizen of the forum state. 28 U.S.C. § 1332 (d) (3) and (4). Here, Defendant is not a citizen

8     of California.

9                                 **VENUE**

10        33.     Venue lies in the Northern District of this Court pursuant to 28 U.S.C.

11     sections 1441, 1446 (a), and 84 (a). This action originally was brought in the Superior Court of

12     the State of California, County of San Francisco, which is embraced by this Court.

13                        **NOTICE OF REMOVAL**

14        34.     This Notice of Removal will be promptly served on Plaintiff and filed with the

15     Clerk of the Superior Court of the State of California in and for the County of San Francisco.

16        35.     In compliance with 28 U.S.C. section 1446 (a), attached hereto as Exhibit A are

17     copies of the state-court papers received by Defendant herein, including the summons and

18     Complaint.

19        WHEREFORE, Defendant prays that this civil action be removed from the Superior Court

20     of the State of California, County of San Francisco, to the United States District Court of the

21     Northern District of California.

22     Dated: June 13, 2011                      LYNNE C. HERMLE
23                                         JULIE A. TOTTEN
                                              DAVID A. PRAHL
24                                      Orrick, Herrington & Sutcliffe LLP

25

26                      By: _____
                                    JULIE A. TOTTEN
27                                    Attorneys for Defendant
                                   LUXOTTICA RETAIL NORTH
28                                    AMERICA INC., an Ohio Corporation

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW

         NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332,
                                                        1441, 1446 AND 1453

# Exhibit A

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Michael Hoffman (SBN 154481)<br>Hoffman Employment Lawyers, LLP<br>100 Pine Street, Suite 1550<br>San Francisco CA 94111<br>TELEPHONE NO: (415) 362-1111    FAX NO.:<br>ATTORNEY FOR (Name): Plaintiff Jessica Stagner | **ENDORSED**<br>**FILED**<br>San Francisco County Superior Court<br><br>MAY 1 2 2011<br><br>CLERK OF THE COURT<br>BY: **PARAM NATT**<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS: 400 McAllister St
CITY AND ZIP CODE: San Francisco 94102
BRANCH NAME: Civic Center Courthouse

CASE NAME:
Stagner v. Luxottica et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited    ☐ Limited<br>(Amount    (Amount<br>demanded    demanded is<br>exceeds $25,000)    $25,000 or less) | ☐ Counter    ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402)    DEPT: | CGC 11-510945 |

*Items 1–6 below must be completed (see instructions on page 2).*

**1.** Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Construction defect (10) |
| Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort | ☐ Other collections (09) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Insurance coverage (18) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | ☐ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | Real Property | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| ☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse condemnation (14) | |
| Non-PI/PD/WD (Other) Tort | ☐ Wrongful eviction (33) | Enforcement of Judgment |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Civil rights (08) | Unlawful Detainer | Miscellaneous Civil Complaint |
| ☐ Defamation (13) | ☐ Commercial (31) | ☐ RICO (27) |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ Other complaint (not specified above) (42) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | Miscellaneous Civil Petition |
| ☐ Professional negligence (25) | Judicial Review | ☐ Partnership and corporate governance (21) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Other petition (not specified above) (43) |
| Employment | ☐ Petition re: arbitration award (11) | |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☑ Other employment (15) | ☐ Other judicial review (39) | |

**2.** This case ☐ is  ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:

a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

**3.** Remedies sought (check all that apply): a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
**4.** Number of causes of action (specify): eight
**5.** This case ☑ is  ☐ is not  a class action suit.
**6.** If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: May 12, 2011
Michael Hoffman
_____
(TYPE OR PRINT NAME)    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007]    **CIVIL CASE COVER SHEET**    Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov

BY FAX

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the*
    *case involves an uninsured*
    *motorist claim subject to*
    *arbitration, check this item*
    *instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or*
    *toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil*
    *harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer*
      *or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally*
    *complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent*
      *domain, landlord/tenant, or*
      *foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal*
    *drugs, check this item; otherwise,*
    *report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex*
    *case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-*
      *domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified*
    *above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-*
      *harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified*
    *above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

LUXOTTICA RETAIL NORTH AMERICA INC., an Ohio
Corporation; LENSCRAFTERS, INC., an Ohio Corporation
*AND 1 THROUGH 10 INCLUSIVE*

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JESSICA STAGNER, individually and on behalf of all other persons
similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* San Francisco Superior Court | CASE NUMBER: *(Número del Caso):* |
|---|---|
| Civic Center Courthouse, 400 McAllister Street, San Francisco CA 94102 | CGC-11-510945 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael Hoffman, Hoffman Employment Lawyers, 100 Pine St., Ste. 1550, San Francisco CA 94111

| DATE: May 12, 2011 *(Fecha)* | CLERK OF THE COURT | Clerk of the Court *(Secretario)* P. NATT | , Deputy *(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [X] on behalf of *(specify):* LensCrafters, Inc, an Ohio Corporation

    under: [X] CCP 416.10 (corporation)  [ ] CCP 416.60 (minor)
    [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
    [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
    [ ] other *(specify):*
4. [X] by personal delivery on *(date):* 05/13/2011

Page 1 of 1

SUMMONS

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

HOFFMAN EMPLOYMENT LAWYERS, LLP
Michael Hoffman (SBN 154481)
mhoffman@employment-lawyers.com
Alec Segarich (SBN 260189)
asegarich@sfemployment-lawyers.com
100 Pine Street, Suite 1550
San Francisco, CA 94111
Tel (415) 362-1111
Fax (415) 362-1112

Attorneys for Plaintiff JESSICA STAGNER

**ENDORSED**
**FILED**
San Francisco County Superior Court

MAY 12 2011

CLERK OF THE COURT
BY: PARAM NATT
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO – UNLIMITED JURISDICTION

| | |
|---|---|
| JESSICA STAGNER, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LUXOTTICA RETAIL NORTH AMERICA INC., an Ohio Corporation; LENSCRAFTERS, INC., an Ohio Corporation, and Does 1 through 10, inclusive,<br><br>Defendants. | Case No. **CGC - 11 - 5 1 0 9 4 5**<br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>1. **Failure to Provide Meal and Rest Breaks** (Cal. Labor Code §§ 226.7, 512);<br>2. **Failure to Furnish Wage and Hour Statements** (Cal. Labor Code §§ 226(e), 226.3);<br>3. **Failure to Maintain Employee Time Records** (Cal. Labor Code § 1174(d));<br>4. **Unfair Competition** (Cal. Bus. & Prof. Code § 17200 *et seq.*);<br>5. **Failure to Compensate Employees for All Hours Worked** (I.W.C. Wage Order No. 7, Cal. Labor Code);<br>6. **Waiting Time Penalties** (Cal. Labor Code §§ 201-203);<br>7. **Misclassification as Exempt**; (I.W.C. Wage Order No. 7, Cal. Labor Code);<br>8. **Labor Code Private Attorney General Act** (Labor Code § 2698).<br><br>**JURY TRIAL DEMANDED** |

BY FAX

Class Complaint
*Stagner v. Luxottica, Inc.*

HOFFMAN EMPLOYMENT LAWYERS
100 Pine Street, Ste. 1550
San Francisco, CA 94111
(415) 362-1111

HOFFMAN EMPLOYMENT LAWYERS
100 Pine Street, Ste. 1550
San Francisco, CA 94111
(415) 362-1111

1   Plaintiff JESSICA STAGNER ("Named Plaintiff" or "Ms. Stagner") individually and on

2   behalf of all others similarly situated, alleges as follows:

3                                        **PARTIES**

4       1.      At all pertinent times mentioned in this Complaint, Plaintiff and Proposed Class

5   Representative Ms. Stagner were and are residents of the City of San Francisco and the State of

6   California. Ms. Stagner was employed by Defendants from April 16, 2010, to April 18, 2011 as

7   an Eye Care Associate and Eye Care Supervisor.

8       2.      LUXOTTICA RETAIL NORTH AMERICA INC ("Luxottica") is an Ohio

9   Corporation doing business in California. The company's corporate headquarters are located in

10  Mason, Ohio and it is registered with the California Secretary of State with Corporation No.

11  C1815165. Luxottica is a wholly owned subsidiary of the Luxottica Group, S.p.A., an Italian

12  Corporation not named as a defendant. Luxottica and its subsidiaries are in the business of

13  designing, manufacturing, and distributing prescription frames and glasses and it engages in all

14  of these activities in California. Other activities of the company include operating vision health

15  care plans in California. Additionally, Luxottica operates an optical retail chain in California

16  through its subsidiary, defendant LENSCRAFTERS, INC.

17      3.      LENSCRAFTERS, INC. ("LensCrafters") is an Ohio Corporation doing business

18  in San Francisco and throughout California. LensCrafters is a wholly-owned subsidiary of

19  Luxottica. The company describes itself as a "leader in optical retailing" and owns and operates

20  over 5,500 retail outlets throughout the United States, including at least three locations in San

21  Francisco proper, and at least 75 locations in the State of California. LensCrafters employed Ms.

22  Stagner at two of its San Francisco locations and caused her the harms alleged below.

23      4.      Plaintiff is ignorant of the true names and capacities of defendants sued herein as

24  Does 1- 10, inclusive, and thus sues such defendants by such fictitious names pursuant to

25  California Code of Civil Procedure § 474, and will amend this complaint to allege their true

26  names and capacities when ascertained. Plaintiff is informed and believes that each of these

27  factiously named defendants is responsible in some manner for the occurrences, and that such

28

1 aforementioned defendants' acts and omissions proximately caused the Plaintiff's injuries as

2 alleged herein.

3      5.     Plaintiff is informed and believes that at all times mentioned herein, the Doe

4 Defendants were the agents, employees and servants of LensCrafters or Luxottica, committed the

5 occurrences, acts and omissions complained of herein while acting within the scope of such

6 agency, employment and servitude, and are responsible for the occurrences, acts and omissions

7 of each Defendant complained of herein.

8                **JURISDICTION AND VENUE**

9      6.     At all times mentioned in this Complaint, Plaintiff was a competent adult, and

10 resident of the state of California and the City of San Francisco.

11      7.     Luxottica is a corporation organized under the laws of the State of Ohio, with its

12 principal executive offices at P.O. Box 8509, Mason Ohio, 45040. It does business in the State

13 of California and the City and County of San Francisco, and owns or operates retail locations in

14 this County.

15      8.     LensCrafters is a corporation organized under the laws of the State of Ohio, with

16 its principal executive offices at 4000 Luxottica Place, Mason Ohio, 45040. It does business in

17 the State of California and the City and County of San Francisco, and owns or operates retail

18 locations in this County.

19      9.     Venue as to all Defendants is proper in this judicial district pursuant to California

20 Code of Civil Procedure § 395(a) and § 395.5, as a significant portion of the acts complained of

21 herein occurred in the County of San Francisco. While the agent for service of process in

22 California for Luxottica and LensCrafters is in Irvine, CA, both defendants own, operate,

23 maintain offices, and/or transact business within this District. Further, Ms. Stagner worked for

24 Defendants in the County of San Francisco and was harmed by them in this district.

25    ///

26    ///

27    ///

28    ///

HOFFMAN EMPLOYMENT LAWYERS
100 Fine Street, Ste. 1550
San Francisco, CA 94111
(415) 352-1111

## CLASS ACTION ALLEGATIONS

10.     Plaintiff brings this action on behalf of herself individually and as members of and representatives for the following Sub-Classes:

    a.   **The "Hourly Subclass":** All non-exempt hourly employees who worked as Eyewear Consultants, Eye Care Associates, In Store Sales Associates, or In Store Sales Specialists in California from May 12, 2007 to the date of filing this Complaint; and

    b.   **The "Misclassification Subclass":** All exempt employees who worked as Sales Supervisors in California from May 12, 2007 to the date of filing this Complaint.

11.     **Common questions predominate.** There is a well-defined community of interest in the questions of law and fact affecting all Class Members, in that a systematic and continuous course of illegal practices was applied to all of them alike, to wit: Defendant (1) failed to provide duty-free meal and rest periods to the Class or provide premium pay for such missed meal and rest periods; (2) failed and refused to provide the Class with timely and accurate wage and hour statements; (3) failed and refused to maintain complete and accurate payroll records for the Class; (4) failed to compensate employees for all hours worked; (5) failed to compensate employees for all accrued wages when due; (6) misclassified members of the Misclassification Subclass as exempt from the provisions of the I.W.C. Wage Orders and Labor Code set out for hourly employees, and (7) committed unfair business practices in an effort to increase profits and to gain and unfair business advantage at the expense of the Class and the public. These common questions of law and fact predominate over any individual question relating to a Class Member. The forgoing acts and other acts by Defendant violated the California Labor Code and the applicable Wage Orders issued by the Industrial Welfare Commission of the State of California (collectively, the "Employment Laws and Regulations").

12.     **Numerosity.** Plaintiff is informed and believes that the total number of Class Members is over 1000, making joinder of all Class Members impracticable and making treatment of all class members' claims collectively, rather than individually, to the benefit of the parties and the Court.

HOFFMAN EMPLOYMENT LAWYERS
100 Pine Street, Ste. 1550
San Francisco, CA 94111
(415) 362-1111

13.     **Typicality.** Plaintiff's claims are typical of those of other Class Members, in that her job titles, duties and activities are the same as those of the other Class Members, she denied the same meal and rest periods as the rest of the Class, and was otherwise denied the benefits and protections of the Employment Laws and Regulations in the same manner as were the other Class Members in both subclasses.

14.     **Adequacy.** Plaintiff is able to fairly and adequately protect the interests of the rest of the Class, because (1) her interests are aligned with those of the rest of the Class in that her claims are the same as those of a typical Class Member, the Class as a whole shares many common questions of law and fact, and there is no evidence of any antagonism between her and the rest of the Class; and (2) Plaintiff's counsel is competent and experienced in litigating class actions in California based on violations of the Employment Laws and Regulations.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

15.     Plaintiff exhausted all administrative remedies and satisfied all private, administrative and judicial prerequisites to the institution of this action required under California Labor Code Section 2699.5, *Caliber Bodyworks, Inc. v. Superior Court (Herrera)* (2005) 134 Cal. App. 4th 365, and *Dunlap v. Superior Court (Bank of America, N.A.* (2006) 142 Cal. App. 4th 330, insofar as such prerequisites pertain to Plaintiff's Causes of Action brought pursuant to the Private Attorney General's Act, California Labor Code § 2699 *et seq.* Specifically, Plaintiff sent written notice by certified mail to the Labor and Workforce Development agency (LWDA) and the employer including specific provisions of the Labor Code that have been violated and facts and theories to support said violations.

## FACTS COMMON TO MORE THAN ONE CAUSE OF ACTION

16.     At all relevant times alleged herein, Plaintiff is informed and believe that Luxottica and LensCrafters are authorized to and do conduct business in the state of California in the retail industry, employing Class Members in various positions as described in the Class Definition at dozens of LensCrafters and Luxottica store locations throughout the state. Class Members are required to, among other things, test patients' eyes, assist eye doctors, prepare charts, answer phones, greet customers, and other duties.

HOFFMAN EMPLOYMENT LAWYERS
100 Pine Street, Ste. 1550
San Francisco, CA 94111
(415) 362-1111

-4-

HOFFMAN EMPLOYMENT LAWYERS
100 Pine Street, Ste. 1550
San Francisco, CA 94111
(415) 362-1111

1    17.    Defendants have a policy of not allowing Class Members to take meal periods or

2  to take rest periods during their shifts. Plaintiff missed meal and rest periods as a result of this

3  policy. She was not exempt from the meal and rest period requirements established for hourly

4  employees, nor did she sign any waiver of her rights to such breaks. Finally, when Ms. Stagner

5  and all Class Members missed meal and/or rest periods, they were not provided premium pay for

6  those missed meal and/or rest periods.

7    18.    Defendants also have a policy of requiring Hourly Subclass Members to work

8  "off the clock." Specifically, LensCrafters has a computer-based timekeeping system, and

9  employees are instructed to punch in and out using this system. However, employees are also

10  required to continue working after they have punched out, from fifteen to thirty minutes, several

11  days per week. Hourly Subclass Members, including Ms. Stagner, were regularly required to

12  work after they had punched out, by helping customers, closing the retail location, and other

13  duties. This additional, unpaid work was required by the company.

14    19.    When Class Members are terminated from their employment with Defendants,

15  they are not immediately provided their final checks, and employees who resign do not receive

16  their final checks within 72 hours of separation from employment. Defendants do not provide

17  former employees with their final checks until several weeks after their employment has ended.

18  Ms. Stagner did not receive her final check as of the filing of this complaint, almost one month

19  after her termination.

20    20.    Defendants employ Sales Supervisors as exempt from the provisions of the

21  California Labor Code, I.W.C. Wage Orders, and related regulations, as executive employees.

22  However, these employees, i.e., the members of the Misclassification Subclass are neither paid

23  adequately to qualify for the exemption, nor do their job duties meet the requisite level of

24  discretion to qualify. These employees earn less than two times the minimum wage, do not have

25  the authority to hire or fire other employees, are not responsible for directing other, subordinate

26  employees' work, and do not exercise the independent judgement and discretion that would

27  otherwise qualify them as exempt executive employees. Because of this misclassification, the

28

1 │ Misclassification Subclass has been denied breaks, pay for all hours worked, and other benefits

2 │ accorded to non-exempt employees.

3 │ **FIRST CAUSE OF ACTION**

4 │ **Failure to Provide Meal and Rest Breaks**

5 │ **(Cal. Labor Code §§ 226.7, 512)**

6 │ **(By All Class Members against All Defendants)**

7 │     21.    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 20,

8 │ inclusive, as though set forth fully herein.

9 │     22.    During the Class Period, LensCrafters routinely failed to provide Class Members,

10 │ including Plaintiff, with duty-free meal and rest periods during their work shifts, and failed to

11 │ compensate the Class Members, including Plaintiff, for said meal and rest periods, as required by

12 │ California Labor Code sections 226.7 and 512, and Industrial Welfare Commission Order 7-

13 │ 2001.

14 │     23.    The Class Members, including Plaintiff, have been deprived of their rightfully

15 │ earned compensation for meal and rest periods as a direct and proximate result of Defendant's

16 │ failure and refusal to pay said compensation. The Class Members, including Plaintiff, are entitled

17 │ to recover such amounts pursuant to California Labor Code section 226.7(b), plus interest

18 │ thereon, attorney's fees, and cost of suit.

19 │     24.    In committing the foregoing acts, Defendant was guilty of oppression, fraud or

20 │ malice, and, in addition to the actual damages caused thereby, Class Members are entitled to

21 │ recover damages for the sake of example and by way of punishing Defendant.

22 │ **SECOND CAUSE OF ACTION**

23 │ **Failure to Furnish Wage and Hour Statements**

24 │ **(Cal. Labor Code §§ 226(e), 226.3)**

25 │ **(By all Class Members against All Defendants)**

26 │     25.    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 24,

27 │ inclusive, as though set forth fully herein.

28 │

HOFFMAN EMPLOYMENT LAWYERS<br>100 Pine Street, Ste. 1550<br>San Francisco, CA 94111<br>(415) 362-1111

-6-

Class Complaint<br>*Stagner v. Luxottica, Inc.*

HOFFMAN EMPLOYMENT LAWYERS
100 Pine Street, Ste. 1550
San Francisco, CA 94111
(415) 362-1111

26.     During the Class Period, Defendants failed to provide Class Members, including Plaintiff, with timely and accurate wage and hour statements showing gross wages earned, total hours worked, all deductions made, net wages earned, the name and address of the legal entity employing that Class Member, and all applicable hours rates in effect during each pay period and the corresponding number of hours worked at each hourly rate by the Class Member.

27.     As alleged herein, the Class Members, including Plaintiff, are not exempt from the requirements of the Employment Laws and Regulations.

28.     Based on Defendant's conduct as alleged herein, Defendant is liable for damages and statutory penalties pursuant to California Labor Code section 226, and other applicable provisions of the Employment Laws and Regulations.

## THIRD CAUSE OF ACTION

### Failure to Maintain Employee Time Records

### (Cal. Labor Code § 1174(d))

### (By all Class Members against All Defendants)

29.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 28, inclusive, as though set forth fully herein.

30.     California Labor Code Section 1174(d) requires all employers to keep proper employee time records, including payroll records, which must show the daily hours worked by each employee.

31.     As described above, Plaintiff and all of the Hourly Subclass Members were required to work "off the clock" as part of their jobs.  Similarly, Plaintiff and the Misclassification Subclass Members were misclassified as exempt, and on this basis were not provided with payroll records indicating daily hour totals, which prevented Plaintiff and all Class Members from being properly compensated.

32.     As a result, the employee time records, if any, maintained by Defendants are wholly inaccurate, as they do not reflect any hours worked by any employee, either because they omit time spent working "off the clock" regarding the Hourly Subclass, or because no records were kept at all regarding the Misclassification Subclass. Accordingly, the employee time

-7-

1   records maintained by Defendant are inaccurate with respect to the number of hours worked,

2   and, correspondingly, the amount of wages owed to and/or paid to employees.

3       33.     As a proximate result of the above mentioned violations, Plaintiff and the Class

4   Members have been damaged in an amount according to proof at time of trial, and seek a civil

5   penalty be imposed against Defendant in accordance with California Labor Code Section 2669.5.

6       34.     Wherefore, Plaintiff requests relief as hereinafter provided.

7                           **FOURTH CAUSE OF ACTION**

8                              **Unfair Competition**

9                       **(Cal. Bus. & Prof. Code § 17200 et seq.)**

10                    **(By all Class Members against All Defendants)**

11      35.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 34,

12   inclusive, as though set forth fully herein.

13      36.     Defendants' violations of the Employment Laws and Regulations as alleged

14   herein, including Defendants' failure to provide meal and rest breaks to the Class Members,

15   requiring Class Members to work "off the clock," and not providing former employees with their

16   final checks in a timely fashion constitute unfair business practices in violation of California

17   Business & Professional Code Section 17200, et seq.

18      37.     Defendants' violations of California wage and hour laws constitute a business

19   practice because it was done repeatedly, over a significant period of time, and in a systematic

20   manner to the detriment of Plaintiff and the Class Members.

21      38.     As a result of Defendants' unfair business practices, Defendants reaped unfair

22   benefits and illegal profits at the expense of Plaintiff, the Class Members, and members of the

23   public. Defendants should be made to restore such monies to Plaintiff and the Class Members.

24      39.     Defendants' unfair business practices entitle Plaintiff to seek preliminary and

25   permanent injunctive relief, including but not limited to orders that Defendant account for and

26   restore to the Class Members the overtime compensation unlawfully withheld from them.

27   ///

28   ///

HOFFMAN EMPLOYMENT LAWYERS
100 Pine Street, Ste. 1550
San Francisco, CA 94111
(415) 362-1111

HOFFMAN EMPLOYMENT LAWYERS
100 Pine Street, Ste. 1550
San Francisco, CA 94111
(415) 362-1111

## FIFTH CAUSE OF ACTION

### Failure to Properly Compensate Employees for All Hours Worked

### (Cal. Labor Code §§ 200, 226, 500, 510, 1197, 1198)

### (By the Hourly Subclass Members against all Defendants)

40.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 39, inclusive, as though set forth fully herein.

41.     During the Class Period, Defendants were required to compensate its hourly employees for all hours worked upon reporting for work, pursuant to the Industrial Welfare Commission Order 2-2001, California Code of Regulations, Title 8, Chapter 5, Section 11070, Labor Code Sections 200, 226, 500, 510, 1197, and 1198.

42.     At all relevant times, Defendant failed and refused to compensate employees for all hours worked. As described above, Hourly Subclass Members are required to stay at work for fifteen to thirty minutes after their shifts have ended and they have punched out using the company's timekeeping system. During this time, they are required to complete tasks such as helping customers and closing the retail locations where they work. They are not compensated for this time. Likewise, Misclassification Subclass members are not paid for all the hours they work because their time is not recorded at all.

43.     As alleged herein, the Hourly Subclass Members, including Plaintiff, are not exempt from the requirements of the Employment Laws and Regulations, and the Misclassification Subclass Members, although classified as exempt from the Employment Laws and Regulations by Defendants, are in fact non-exempt employees, based on the fact that they do not earn more than two times the minimum wage and they are not in fact managerial employees.

44.     The Class Members, including Plaintiff, have been deprived of their rightfully earned compensation as a direct and proximate result of Defendant's failure and refusal to pay said compensation. Under the above mentioned wage order and state regulations, Plaintiff is entitled to recover compensation for all hours worked, but not paid, for the three (3) years preceding the filing of this action, in addition to reasonable attorney's fees and costs of suit.

///

HOFFMAN EMPLOYMENT LAWYERS
100 Pine Street, Ste. 1550
San Francisco, CA 94111
(415) 362-1111

## SIXTH CAUSE OF ACTION

### Waiting Time Penalties

### (Cal. Labor Code §§ 201, 202, 203)

### (By all Class Members against All Defendants)

45. Plaintiff incorporates by reference and re-alleges paragraphs 1 through 44, inclusive, as though set forth fully herein.

46. During the Class Period, Defendant failed to pay the Class Members, including Plaintiff, accrued wages and other compensation due immediately upon termination or within seventy-two hours of resignation, as required.

47. As alleged herein, the Class Members, including Plaintiff, are not exempt from the requirements of the Employment Laws and Regulations.

48. Based on Defendant's conduct as alleged herein, Defendant is liable for statutory penalties pursuant to California Labor Code section 203, and other applicable provisions of the Employment Laws and Regulations.

49. At all times relevant herein, which comprise the time period not less than three (3) years preceding the filing of this action, Defendant was required to compensate its hourly employees for all hours worked upon reporting for work at the appointed time stated by the employer, pursuant to Industrial Welfare Commission Orders 7-80 and 7-98, California Code of Regulations, Title 8, Chapter 5 Section 11070, Labor Code Sections 200, 226, 500, 510, 1197, and 1198.

50. For at least the three (3) years preceding the filing of this action, Defendant failed to compensate its employees for all hours worked. Defendant established policies which actively prevented employees from being compensated for all time worked, as required by law. Defendant failed to furnish Class Members, including Plaintiff, with all accrued wages immediately upon termination or within seventy-two hours of resignation.

51. Defendant requires Plaintiff and the Class Members to work without pay. Under the above mentioned wage orders and state regulations, Plaintiff is entitled to recover compensation for all hours worked, but not paid, for three (3) years preceding the filing of this

1   action, in addition to reasonable attorney's fees and costs of suit in accordance with Labor Code

2   Section 218.5, and penalties pursuant to Labor Code Sections 203 and 206.

3       52.    Defendant has knowingly and willfully refused to perform its obligations to

4   compensate Plaintiff for all wages earned and all hours worked, in violation of state law. As a

5   direct result, Plaintiff and the Class Members have suffered, and continue to suffer, substantial

6   losses related to the use and enjoyment of such wages, lost interest on such wages, and expenses

7   and attorney's fees in seeking to compel Defendant to fully perform their obligation under state

8   law, in accordance with Plaintiff's respective damage amounts according to proof at time of trial.

9   Defendant committed such actions alleged knowingly and willfully, with the wrongful and

10  deliberate intention of injuring Plaintiff, from improper motives amounting to malice, and in

11  conscious disregard of the Class Members' rights.

12      53.    Plaintiff is thus entitled to recover nominal, actual, compensatory, and exemplary

13  damages in amounts according to proof at trial.

14      54.    As a proximate result of the above mentioned violations, Plaintiff has been

15  damaged in and amount according to proof at trial.

16  **SEVENTH CAUSE OF ACTION**

17  Misclassification as Exempt

18  (California Industrial Welfare Commission Orders and California Labor Code)

19  (By the Misclassification Subclass against All Defendants)

20      55.    Plaintiff incorporates paragraphs 1 though 54 as though set forth fully herein.

21      56.    At all relevant times alleged herein, Plaintiff is informed and believes that

22  LensCrafters is authorized to conduct business in the State of California and does conduct

23  business throughout the State of California as an optical retailer, employing Class Members at

24  dozens of locations throughout the Bay Area and the State.

25      57.    The California Industrial Welfare Commission defines exempt employees as

26  those employees, who, among other qualities, earn at least two (2) times the minimum wage. See

27  I.W.C. Wage Orders 4 and 7, §§I(A)(1)(f); I(A)(2)(g); I(A)(3)(d). The minimum wage in

28  California is eight dollars ($8.00) per hour. Thus, to be exempt from the requirements of the

HOFFMAN EMPLOYMENT LAWYERS
100 Pine Street, Ste. 1550
San Francisco, CA 94111
(415) 362-1111

1   Labor Code and other Wage Orders, an employee must earn at least sixteen dollars ($16.00) per
2   hour.

3       58.     Plaintiff and the Misclassification Subclass Members earned less than $16.00 per
4   hour. They were instead paid less than double the minimum wage per hour. Plaintiffs were all
5   classified as exempt by Defendants, and paid accordingly.

6       59.     Defendants thus improperly classified Plaintiff and the Misclassification Subclass
7   as exempt from the wage and hour requirements set forth in the Labor Code and I.W.C. Wage
8   Orders, because they did not earn enough to be qualified as exempt.

9       60.     Because of this misclassification, Plaintiffs have been harmed by not properly
10  being paid for all hours they worked, not receiving proper meal and rest periods, not receiving
11  wage and hour statements detailing what they are actually owed, and other violations, as alleged
12  in this complaint.

13      61.     Based on Defendants' conduct as alleged herein, Defendants are liable for
14  damages and statutory penalties pursuant to California Labor Code § 226, and other applicable
15  provisions of the Employment Laws and Regulations, in accordance with Labor Code Section
16  218.5, and penalties pursuant to Labor Code §§ 203 and 206.

17              <u>**EIGHTH CAUSE OF ACTION**</u>

18              **Labor Code Private Attorney General Act**

19                  **(Cal. Labor Code § 2698)**

20          **(By all Class Members against All Defendants)**

21      62.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 61,
22  inclusive, as though set forth fully herein.

23      63.     Plaintiff gave written notice by certified mail to the Labor and Workforce
24  Development Agency (the Agency) of the specific provisions of this code alleged to have been
25  violated as required by Labor Code § 2699.3 on May 12, 2011. Plaintiff did not receive a
26  response from the Agency after thirty three days that it intended to investigate the allegations of
27  the Complaint. As a result, pursuant to Section 2699.3, Plaintiff may now commence a civil
28  action pursuant to Section 2699.

HOFFMAN EMPLOYMENT LAWYERS
100 Pine Street, Ste. 1550
San Francisco, CA 94111
(415) 362-1111

-12-

64.     The policies, acts and practices heretofore described violate the applicable Labor Code sections listed in Labor Code § 2699.5 and thereby gives rise to statutory penalties as a result of such conduct.  Plaintiff, and all Class Members, as aggrieved employees, hereby seek recovery of civil penalties as prescribed by the Labor Code Private Attorney General Act of 2004 on behalf of themselves and all other aggrieved employees against whom one or more of the aforementioned violations of the Labor Code was committed.

Wherefore, Plaintiff request relief as hereinafter provided:

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief individually and on behalf of all others similarly situated as follows:

1.  For general damages in amounts according to proof and in no event in an amount less than the jurisdictional limit of this court;

2.  For punitive damages;

3.  For restitution of all monies due to Plaintiff from the unlawful business practices of Defendants;

4.  For waiting time penalties pursuant to Labor Code § 203;

5.  For penalties pursuant to Labor Code §§ 201, 226, 556, 1194, 1194.2, 2669.5, 2802, 1174(d), and 2699, and any and all other Labor Code Sections herein mentioned which provide for penalties as a result of the above-mentioned alleged conduct;

6.  For pre-judgment and post-judgment interest as provided by law;

7.  For costs of suit incurred herein and attorneys' fees pursuant to Labor Code § 226 and other provisions of the Labor Code;

For such other and further relief as the Court deems fair and just.

DATED: May ___, 2011                    HOFFMAN EMPLOYMENT LAWYERS, LLP




                                        MICHAEL HOFFMAN
                                        Attorney for Plaintiff JESSICA STAGNER

HOFFMAN EMPLOYMENT LAWYERS
100 Pine Street, Ste. 1550
San Francisco, CA 94111
(415) 362-1111

CASE NUMBER: CGC-11-510945 JESSICA STAGNER, INDIVIDUALLY AND ON BEHALF OF

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

DATE: OCT-14-2011

TIME: 9:00AM

PLACE: Department 610
400 McAllister Street
San Francisco, CA 94102-3680

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order without an appearance at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL. (SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]

Superior Court Alternative Dispute Resolution Coordinator
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges

# Alternative Dispute Resolution (ADR) Program Information Package

# Alternatives to Trial

## There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package on each defendant along with the complaint. (CRC 3.221(c))



**Superior Court of California
County of San Francisco**

## Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

## Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can save time.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR encourages participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR is flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

1) Judicial Arbitration
2) Mediation
3) The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called judicial arbitration. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties

ADR-1 12/10 (rw)                           Page 4

voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## Operation

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

## Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

## MEDIATION

## Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

## Operation

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at **www.sfsuperiorcourt.org**. Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

## Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation. The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110). Both forms are attached to this packet.

### Mediation Services of the Bar Association of San Francisco

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by BASF pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $250 per party administration fee, parties select a specific mediator from the list of approved mediation providers or BASF will help them select an appropriate mediator for the matter. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at www.sfbar.org/mediation or you may call the BASF at 415-982-1600.

### Judicial Mediation

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court's Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

### Cost

Generally, the cost of Private Mediation ranges from $100 per hour to $800 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $250 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the Case Management Statement (CM-110).

If the Court assigns a matter to the ESP, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

*Cost*

All parties must submit a $250 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 782-9000 ext. 8717.

* * * * * * * * * * * * * * * * * * * *

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution,
400 McAllister Street, Room 103.
San Francisco, CA 94102
(415) 551-3876

Or, visit the Superior Court Website at www.sfsuperiorcourt.org

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 McAllister Street, San Francisco, CA  94102-4514

|  |  |
|---|---|
| Plaintiff<br><br>v.<br><br>Defendant | Case No. _____<br><br>**STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**<br><br>DEPARTMENT  212 |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐ Private Mediation ☐ Mediation Services of BASF ☐ Judicial Mediation
☐ Binding arbitration            Judge _____
☐ Non-binding judicial arbitration            Judge _____
☐ BASF Early Settlement Program
☐ Other ADR process (describe) _____

Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

_____

_____

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff   ☐ Defendant   ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff   ☐ Defendant   ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff   ☐ Defendant   ☐ Cross-defendant | | Dated: _____ |

☐  *Additional signature(s) attached*

ADR-2  05/10                STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:          FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| *(Check one):*  ☐ UNLIMITED CASE  ☐ LIMITED CASE<br>(Amount demanded     (Amount demanded is $25,000<br>exceeds $25,000)      or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:                    Time:              Dept.:          Div.:          Room:

Address of court *(if different from the address above)*:

☐ Notice of Intent to Appear by Telephone, by *(name)*:

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1. Party or parties *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted jointly by parties *(names)*:

2. Complaint and cross-complaint *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. Service *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:
      (3) ☐ have had a default entered against them *(specify names)*:
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4. Description of case
   a. Type of case in ☐ complaint ☐ cross-complaint *(Describe, including causes of action)*:

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2009]

**CASE MANAGEMENT STATEMENT**

Page 1 of 4

Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

| | CM-110 |
|---|---|
| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| DEFENDANT/RESPONDENT: | |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
   a. ☐ The trial has been set for *(date):*
   b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

   c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
   a. ☐ days *(specify number):*
   b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
   a. Attorney:
   b. Firm:
   c. Address:
   d. Telephone number:
   e. Fax number:
   f. E-mail address:
   g. Party represented:
   ☐ Additional representation is described in Attachment 8.

9. **Preference**
   ☐ This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
    a. Counsel ☐ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
    b. ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
    c. ☐ The case has gone to an ADR process *(indicate status):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**10. d.** The party or parties are willing to participate in *(check all that apply)*:

    (1) ☐ Mediation

    (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

    (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

    (4) ☐ Binding judicial arbitration

    (5) ☐ Binding private arbitration

    (6) ☐ Neutral case evaluation

    (7) ☐ Other *(specify)*:

    e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

    f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

    g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption)*:

**11. Settlement conference**

    ☐ The party or parties are willing to participate in an early settlement conference *(specify when)*:

**12. Insurance**

    a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:

    b. Reservation of rights: ☐ Yes ☐ No

    c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

    ☐ Bankruptcy ☐ Other *(specify)*:
    Status:

**14. Related cases, consolidation, and coordination**

    a. ☐ There are companion, underlying, or related cases.

        (1) Name of case:

        (2) Name of court:

        (3) Case number:

        (4) Status:

    ☐ Additional cases are described in Attachment 14a.

    b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

**15. Bifurcation**

    ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**16. Other motions**

    ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

| PLAINTIFF/PETITIONER: | CASE NUMBER: | CM-110 |
|---|---|---|
| DEFENDANT/RESPONDENT: | | |

**17. Discovery**

   a. ☐ The party or parties have completed all discovery.

   b. ☐ The following discovery will be completed by the date specified (describe all anticipated discovery):

| Party | Description | Date |
|---|---|---|
| | | |

   c. ☐ The following discovery issues are anticipated (specify):

**18. Economic litigation**

   a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

   b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed (if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):

**19. Other issues**

   ☐ The party or parties request that the following additional matters be considered or determined at the case management conference (specify):

**20. Meet and confer**

   a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court (if not, explain):

   b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following (specify):

**21. Total number of pages attached** (if any): _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____     ►     _____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY)

_____     ►     _____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY)

                                               ☐ Additional signatures are attached.



# Superior Court of California
## County of San Francisco



HON. KATHERINE FEINSTEIN
PRESIDING JUDGE

## Judicial Mediation Program

JENIFER B. ALCANTARA
ADR ADMINISTRATOR

The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to personal injury, professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial Mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

| | |
|---|---|
| The Honorable Linda Colfax | The Honorable Tomar Mason |
| The Honorable Michael Begert | The Honorable James J. McBride |
| The Honorable Gail Dekreon | The Honorable Ronald Quidachay |
| The Honorable Ernest H. Goldsmith | The Honorable A. James Robertson, II |
| The Honorable Harold E. Kahn | The Honorable John K. Stewart |
| The Honorable Curtis Karnow | The Honorable Monica F. Wiley |
| The Honorable Charlene P. Kiesselbach | The Honorable Mary E. Wiss |
| The Honorable Patrick J. Mahoney | The Honorable Charlotte W. Woolard |

Parties interested in Judicial Mediation should file the Stipulation to Alternative Dispute Resolution form indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 610. A preference for a specific judge may be indicated on the form but assignment to a particular judge is not guaranteed. Please allow at least 30 days from the filing of the form to receive the notice of assignment. The court Alternative Dispute Resolution Administrator will facilitate assignment of cases that qualify for the program.

Note: Space and availability is limited. Submission of a stipulation to Judicial Mediation does *not* guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

03/2011 (ja)

# MEDIATION SERVICES

## What users are saying . . .

"We had an excellent experience and, after 8 1/2 hours of mediation, [the BASF mediator] settled a very difficult case involving claims against four clients of ours by a wealthy investor who claimed inadequate disclosure was made."

Robert Charles Friese, Esq.
Shartsis Friese LLP

"The BASF Mediation Services is the best deal in town and the mediator was the best I have ever experienced."

Vernon Bradley, Esq.
Bradley Law Offices

"Much thanks to the mediator and The Bar Association of San Francisco. The mediator was extraordinary; he went above and beyond the call of duty, and his knowledge of real property issues greatly assisted the parties."

Robert P. Travis, Esq.
Travis and Pon

"BASF staff was very helpful — stayed on the task and kept after a hard to reach party. The mediator was great!"

Mark Abelson, Esq.
Campagnoli, Abelson
& Campagnoli

"The [BASF] mediator was excellent! He was effective with some strong, forceful personalities."

Denise A. Leadbetter, Esq.
Zacks, Utrecht & Leadbetter

Business
Civil Rights
Commercial
Construction
Contracts
Disability
Discrimination
Education
Employment/Workplace
Environmental
Family
Family-Certified Specialists
Fee Disputes
Financial
Government
Insurance
Intellectual Property
Intra-Organizational
Labor
Landlord/Tenant
Land Use
LGBT Issues
Malpractice: Legal-Medical-Professional
Partnership Dissolution
Personal Injury
Probate/Trust
Product Liability
Real Estate
Securities
Taxation
Uninsured Motorist
Women's Issues
And more...

## WHAT IS BASF'S MEDIATION SERVICE?

Mediation Services was established in 2005 by The Bar Association of San Francisco (BASF) with extensive input from experienced mediators, litigators and judges. Our mediation service can assist with almost any type of dispute, from simple contract disputes to complex commercial matters.

## WHO ARE THE MEDIATORS?

They are established mediators who have private mediation practices and have met our rigorous training and experience requirements. By going through BASF, you receive the services of these highly qualified mediators at a great value.

## HOW MUCH DOES THE SERVICE COST?

A $250 per party administrative fee is paid to BASF. This fee covers the first hour of mediator preparation time and the first two hours of session time, but your mediation is not limited to three hours. Time beyond these three hours is paid at the mediator's normal hourly rate. To qualify for the pro-bono hours from our professional mediators, parties must file the Consent to Mediate form with BASF.

## HOW IS THE MEDIATOR CHOSEN?

You may request a specific mediator from our website (www.sfbar.org/mediation) and indicate your choice on the BASF Consent to Mediate form, or you may indicate on the form that you would like BASF to assist with the selection.

## WHY DO THE MEDIATORS GIVE FREE HOURS; IS THE SERVICE ONLY FOR "SMALL" MATTERS?

The mediators are professionals who have agreed to provide the free time as a service to BASF, allowing us to offer a unique mediation panel of high quality and value. Our mediators are available for any size case; we've handled everything from simple property disputes to complex business matters.

## WHY SHOULD I GO THROUGH BASF, CAN'T I JUST CALL THE MEDIATOR DIRECTLY?

The BASF mediators are available privately but have also agreed to serve on our panel and provide three free hours as a service to BASF. If you go directly to one of our mediators, you do not qualify for the pro bono hours. Once you have filed with us, you will work directly with the mediator.

## HOW LONG IS THE MEDIATION SESSION?

The time spent in mediation will vary depending on your dispute. The mediators are dedicated to reaching a settlement, whether you need a few hours or several days.

## WHO CAN USE THE SERVICE?

The BASF mediators can be utilized by anyone and is NOT limited to San Francisco residents or issues. Also, the service may be used before a court action is filed or at any time during court action.

## OUR CASE IS FILED IN COURT; HOW DO WE USE BASF'S MEDIATION SERVICE?

When you file the San Francisco court's stipulation to ADR, simply check the box indicating your choice as Mediation Services of BASF. Then complete BASF's Consent to Mediate form found on our website and file it with us, or call us for the form. (If the matter was filed in a different county, please check with that court for the appropriate process.)

## WE ARE ON A DEADLINE; HOW QUICKLY CAN WE MEDIATE?

Once all parties have filed the BASF Consent to Mediate form and paid the administrative fees, BASF can normally have you in touch with the mediator within a day or two. If you have a deadline, staff will give the matter top priority.

## WHAT TYPES OF DISPUTES CAN I MEDIATE?

BASF mediators are trained in dozens of areas of disputes. If you don't see the area you need in our 30+ panels found on our website and this brochure, just contact us; it is very likely we can match your need with one of our panelists.

## MORE INFORMATION

Our website provides photographs, short biographies and hourly rates of our mediators. You can search by name or by area of law. For personal assistance, please call 415-982-1600.

WWW.SFBAR.ORG/MEDIATION & ADR@SFBAR.ORG · 415.982.1600