IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA STAGNER, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>LUXOTTICA RETAIL NORTH AMERICA, INC.; and LENSCRAFTERS, INC.,<br><br>          Defendants.<br>_____/ | No. C 11-02889 CW<br><br>ORDER DENYING LUXOTTICA'S MOTION TO COMPEL ARBITRATION, GRANTING IN PART AND DENYING IN PART LUXOTTICA'S MOTION TO DISMISS, AND GRANTING LUXOTTICA'S MOTION TO STRIKE (Docket Nos. 8) |
| JESSICA STAGNER,<br><br>          Plaintiff,<br><br>     v.<br><br>LUXOTTICA RETAIL NORTH AMERICA, INC.; LENSCRAFTERS, INC.; EDWARD AUSTRIA; and ELIZABETH CHEN,<br><br>          Defendants.<br>_____/ | No. C 11-03168 CW<br><br>ORDER DENYING LUXOTTICA'S MOTION TO COMPEL ARBITRATION, GRANTING LUXOTTICA'S MOTION TO DISMISS, AND GRANTING LUXOTTICA'S MOTION TO STRIKE (Docket Nos. 8) |

**United States District Court**
**For the Northern District of California**

     In these related cases, Plaintiff Jessica Stagner brings claims against Defendant Luxottica Retail North America, Inc., her former employer.[1]  Luxottica moves to compel arbitration of Plaintiff's claims.  In the alternative, it seeks dismissal of some of Plaintiff's claims and asks the Court to strike portions of her complaints.  Plaintiff opposes Luxottica's motions to compel

_____

     [1] Luxottica represents that it does business as LensCrafters, which Plaintiff does not dispute.  Thus, although Plaintiff names LensCrafters as a separate Defendant, the Court understands her claims against LensCrafters to be against Luxottica.

arbitration and Luxottica's motion to dismiss her claims in the 11-2889 action.   Plaintiff did not respond to Luxottica's motion to dismiss some of her claims in the 11-3168 action.[2]   The motions will be decided on the papers.   Having considered the papers submitted by the parties, the Court DENIES Luxottica's motions to compel arbitration; GRANTS in part Luxottica's motion to dismiss in the 11-2889 action, and DENIES it in part; GRANTS Luxottica's motion to dismiss in the 11-3168 action and GRANTS Luxottica's motions to strike.

BACKGROUND

Unless otherwise specified, the following allegations are taken from Plaintiff's complaints.

Plaintiff worked for Luxottica, which does business as LensCrafters, from April 16, 2010 to April 18, 2011.[3]   Luxottica hired her as an Eye Care Associate.   In February 2011, she was promoted to an Eye Care Supervisor.

On March 20, 2011, Plaintiff visited a doctor because of an eye infection.   She informed Luxottica of her condition.   Based on her doctor's recommendation, Plaintiff took leave for several days.

On April 4, 2011, Plaintiff again visited a doctor for her condition.   The doctor recommended that she not see patients for seven to ten days.   Plaintiff submitted her doctor's recommendation

---

[2] In lieu of an opposition in the 11-3168 action, Plaintiff requested judicial notice of her opposition in 11-2889 action. That opposition, however, did not address her claims in the 11-3168 action.

[3] Luxottica complains that it has no record of Plaintiff working at any of its LensCrafters locations after October 2010. On a motion to dismiss, however, Plaintiff's factual allegations must be taken as true.  <u>Gordon v. City of Oakland</u>, 627 F.3d 1092, 1095 (9th Cir. 2010).

United States District Court
For the Northern District of California

to Luxottica.

On April 7, 2011, Plaintiff learned from a co-worker that Edward Austria and Elizabeth Chen, two of Luxottica's regional managers, intended to replace her.  On April 11, 2011, Austria and Chen informed Plaintiff that Luxottica was "rescinding her position."  11-3168 Compl. ¶ 20.  They noted that Plaintiff was still in "the probationary period" as an Eye Care Supervisor.  <u>Id.</u> Austria and Chen told Plaintiff that, upon her return from leave, she would be demoted to an Eye Care Associate, given fewer work hours and transferred to another location.  Plaintiff expressed her displeasure with the changes in her employment, but did not refuse to comply with them.

On April 18, 2011, Austria and Chen met with Plaintiff in an exam room to inform her that her employment was terminated and that she would not receive a bonus.  After they left the room, they locked the door, preventing Plaintiff from leaving.  Plaintiff was locked in the room for ten minutes, after which Austria and Chen released her.  They escorted her out of the store, in view of customers and other employees.  Plaintiff did not receive her final paycheck within a month of her discharge.

During her employment, Luxottica classified Plaintiff as exempt from overtime pay requirements.  Luxottica also maintained policies that deprived Plaintiff of "meal and/or rest periods" and required her to work "'off the clock.'"  11-2889 Compl. ¶¶ 17-18.

To support its motions to compel arbitration, Luxottica proffers the Luxottica Retail Associate Guide, which Plaintiff received at around the time she was hired.  The Guide contains numerous policies, including those related to work schedules, leave

3

United States District Court
For the Northern District of California

benefits and smoking in the workplace.  Rummer Decl., Ex. A.  The Guide also contained various agreements, including Luxottica's "Confidentiality Agreement," "Dispute Resolution Agreement" and "Antitrust Compliance Agreement."  Id.

The Dispute Resolution Agreement (DRA) contained an arbitration clause covering "all legal disputes that" an employee could file in court.  Rummer Decl., Ex. A, at 29.  This expressly included "all claims brought under federal, state and local statutory or common law."  Id.  The DRA provided that, unless employees filed an opt-out form within thirty days of receiving the DRA, they were bound by its terms.  Id. at 27.

Plaintiff signed a "Luxottica Retail Associate Guide Acknowledgment and Agreement" (hereinafter, Associate Guide Acknowledgment).  Rummer Decl., Ex. A, at 53.  The agreement stated, "This will acknowledge that I have received my copy of the Luxottica Retail Associate Guide and that I will familiarize myself with the contents of the Associate Guide and agree to abide by its terms."  Id.  The agreement also provided that Luxottica reserved the right to modify its policies and the terms and conditions of employment at any time and that Plaintiff would be an at-will employee.  The following text appeared above the signature line, "MY SIGNATURE BELOW CERTIFIES THAT I HAVE READ, UNDERSTAND, AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS SET FORTH ABOVE."  Id. (upper case in original).

On the same page, however, just below the Associate Guide Acknowledgment, was an "Acknowledgment and Acceptance of Agreements" (hereinafter, Acceptance of Agreements).  Rummer Decl., Ex. A, at 53.  This agreement stated, in relevant part,

4

1   I acknowledge that I have received and read, and that I
2   understand and agree to the terms of, the following
    Agreements as set forth in the Associate Guide: the
    Confidentiality Agreement; Dispute Resolution Agreement;
3   . . . .

4   Except for the Dispute Resolution Agreement, from which I
    may opt-out by signing and returning the Opt-Out of
5   Dispute Resolution Agreement form within 30 days of
    receipt, I acknowledge and agree that my employment with
6   the Company is conditioned upon my acceptance of the
    terms of these contractually binding agreements.  Absent
7   the exercising of my right to opt-out of the Dispute
    Resolution Agreement, I agree also to be bound by its
8   terms.

9   <u>Id.</u>  Plaintiff did not sign this agreement.

10       In the 11-2889 case, which Plaintiff purports to bring as a

11   class action, she asserts eight causes of action: (1) failure to

12   provide meal and rest breaks, in violation of California Labor Code

13   sections 226.7 and 512; (2) failure to furnish accurate wage and

14   hour statements, in violation of Labor Code sections 226(e) and

15   226.3; (3) failure to maintain accurate employee time records, in

16   violation of Labor Code section 1174(d); (4) unfair competition, in

17   violation of California Business and Professions Code section

18   17200; (5) failure to compensate her for all hours she worked, in

19   violation of Labor Code sections 200, 226, 500, 510, 1197 and 1198;

20   (6) waiting-time penalties, under Labor Code sections 201, 202 and

21   203; (7) "Misclassification as Exempt;" and (8) a claim under the

22   Private Attorney General Act (PAGA), California Labor Code section

23   2698.

24       In the 11-3168 case, Plaintiff asserts, as an individual,

25   claims for interference with her rights under the California Family

26   Rights Act (CFRA), wrongful termination in violation of public

27   policy, intentional infliction of emotional distress and false

28   imprisonment.  These claims are brought against Luxottica and

**United States District Court**
For the Northern District of California

5

Austria and Chen, both of whom are California residents.

Both cases were initially filed in San Francisco Superior Court and subsequently removed by Luxottica.  Luxottica removed the 11-2889 case based on the Class Action Fairness Act, 28 U.S.C. § 1332(d); it removed the 11-3168 case pursuant to 28 U.S.C. § 1332(a)(1).

DISCUSSION

I.   Motions to Compel Arbitration

Under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et seq., written agreements that controversies between the parties shall be settled by arbitration are valid, irrevocable and enforceable.  9 U.S.C. § 2.  A party aggrieved by the refusal of another to arbitrate under a written arbitration agreement may petition the district court which would, save for the arbitration agreement, have jurisdiction over that action, for an order directing that arbitration proceed as provided for in the agreement.  Id. § 4.  The FAA further provides that:

> If any suit or proceeding be brought in any of the courts
> of the United States upon any issue referable to
> arbitration under an agreement in writing for such
> arbitration, the court in which such suit is pending,
> upon being satisfied that the issue involved in such suit
> or proceeding is referable to arbitration under such an
> agreement, shall on application of one of the parties
> stay the trial of the action until such arbitration has
> been had in accordance with the terms of the
> agreement . . . .

Id. § 3.  If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  Id. § 4.

United States District Court
For the Northern District of California

6

United States District Court
For the Northern District of California

The FAA reflects a "liberal federal policy favoring arbitration agreements." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (citations and internal quotation marks omitted). A district court must compel arbitration under the FAA if it determines that: (1) there is a valid agreement to arbitrate; and (2) the dispute falls within its terms. Stern v. Cingular Wireless Corp., 453 F. Supp. 2d 1138, 1143 (C.D. Cal. 2006) (citing Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000)). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT&T Techs., Inc. v. Commun'cs Workers of Am., 475 U.S. 643, 649 (1986) (citations omitted).

"Arbitration is a matter of contract, and the FAA requires courts to honors parties' expectations." Concepcion, 131 S. Ct. at 1752 (citation omitted).

As noted above, the Associate Guide Acknowledgment provided that a signatory promised to "familiarize myself with the contents of the Associate Guide and agree to abide by its terms." It also stated that a signatory agreed that the terms of employment could be changed at any time and that employment was at-will. By signing the Associate Guide Acknowledgment, a signatory promised to have "READ, UNDERSTAND, AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS SET FORTH ABOVE."

Luxottica asserts that the DRA's arbitration provision was among these terms and conditions and that, by signing the Associate Guide Acknowledgment, Plaintiff agreed to arbitrate her claims. Plaintiff disagrees, pointing to the fact that she did not sign the

United States District Court
For the Northern District of California

1  Acceptance of Agreements, which specifically addresses the DRA.

2  Luxottica responds that the Acceptance of Agreements was "largely

3  duplicative," and Plaintiff's failure to sign it does not mean she

4  did not agree to arbitrate her claims.  11-2889 Reply at 2:20-21.

5      Luxottica's insistence that the Acceptance of Agreements

6  should be disregarded as duplicative runs afoul of rules governing

7  contract interpretation.  "The whole of a contract is to be taken

8  together, so as to give effect to every part, if reasonably

9  practicable, each clause helping to interpret the other."  Cal.

10  Civ. Code § 1641.  The effect of this rule "among other things, is

11  to disfavor constructions of contractual provisions that would

12  render other provisions surplusage." <u>Boghos v. Certain</u>

13  <u>Underwriters at Lloyd's of London</u>, 36 Cal. 4th 495, 503 (2005)

14  (citation omitted).  It is true that the Associate Guide

15  Acknowledgment suggested that, by signing it, an individual agreed

16  to all the terms contained in the Associate Guide.  However, the

17  Acceptance of Agreements provided that, by signing it, an

18  individual agreed to the twelve agreements in the Associate Guide,

19  including the DRA, which contains the arbitration clause.  To give

20  both the Associate Guide Acknowledgment and that Acceptance of

21  Agreements effect, the Associate Guide Acknowledgment must be

22  understood to pertain to terms not covered by the agreements

23  enumerated in the Acceptance of Agreements.  Such terms include, as

24  noted above, Luxottica's policies regarding work schedules and

25  leave benefits.  If the Associate Guide Acknowledgment is given

26  this meaning, the Acceptance of Agreements must be understood to

27  concern the twelve agreements listed in it.

28      A second rule of contract interpretation supports Plaintiff's

8

United States District Court
For the Northern District of California

position.  When "general and specific provisions are inconsistent, the latter control."  CAZA Drilling (Cal.), Inc. v. TEG Oil & Gas USA, Inc., 142 Cal. App. 4th 453, 466 (2006) (citation omitted); see also Jackson v. Donovan, 215 Cal. App. 2d 685, 691 (1963). Here, the Acceptance of Agreements had more specific language with regard to the DRA than the Associate Guide Acknowledgment.  Again, this favors an interpretation that the Acceptance of Agreements concerned those agreements enumerated therein, and the Associate Guide Acknowledgment addressed everything else.

To the extent that these precepts do not clarify the contract's meaning, the contract must be construed against Luxottica.  Cal. Civ. Code § 1654 ("In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.").  And, insofar as the conflicting provisions render the contract ambiguous, the Court must consider extrinsic evidence.  Under California law, if contract terms are disputed, "'the trial court must provisionally receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning.'" First Nat'l Mortg. Co. v. Fed. Realty Inv. Trust, 631 F.3d 1058, 1067 (9th Cir. 2011) (quoting Morey v. Vannucci, 64 Cal. App. 4th 904, 912 (1998)).  If, based on the extrinsic evidence, the contract is reasonably susceptible of the proffering party's interpretation, that evidence must then be admitted to assist in the interpretation of the contract.  See First Nat'l, 631 F.3d at 1067; see also Winet v. Price, 4 Cal. App. 4th 1159, 1165 (1992). Here, Plaintiff states that she "did not sign nor agree to sign,

any agreement consenting to arbitration." Stagner Decl. ¶ 4. This suggests that Plaintiff understood that the Acceptance of Agreements related to the DRA and that the Associate Guide Acknowledgment did not.

Plaintiff did not sign the Acceptance of Agreements, which evinces an understanding that she had not agreed to arbitrate her claims. Because no agreement to arbitrate was made, Luxottica's motion to compel arbitration must be denied.

II.  Motions to Dismiss

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Dismissal under Rule 12(b)(6) for failure to state a claim is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911

United States District Court
For the Northern District of California

F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment
would be futile, the court examines whether the complaint could be
amended to cure the defect requiring dismissal "without
contradicting any of the allegations of [the] original complaint."
Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).
Leave to amend should be liberally granted, but an amended
complaint cannot allege facts inconsistent with the challenged
pleading.  Id. at 296-97.

Luxottica moves to dismiss Plaintiff's wage-and-hour claims in
the purported class action and her CFRA and wrongful termination
claims in the individual action.  Luxottica did not move to dismiss
Plaintiff's claims for intentional infliction of emotional distress
and false imprisonment in the individual action.  Austria and Chen
did not file a motion to dismiss, and Plaintiff does not appear to
have served them.

Because Plaintiff did not oppose Luxottica's motion to dismiss
her CFRA and wrongful termination claims in the individual action,
the motion is granted.  Luxottica's motion to dismiss Plaintiff's
claims in the purported class action is discussed below.

A.   Failure to Provide Meal and Rest Breaks

Luxottica complains that Plaintiff fails to allege when, how
and why she was denied meal and rest breaks.  Luxottica also
contends that Plaintiff fails to allege a sufficient factual basis
for her assertion that it had a policy to deny its employees meal
and rest breaks.

Wage-and-hour claims do not require specific pleading.
Although Plaintiff's allegations are limited, they are sufficient
to state a claim.  Thus, Luxottica's motion to dismiss this claim

United States District Court
For the Northern District of California

11

1    is denied.

2         B.   Failure to Provide Accurate Wage Statements

3         Luxottica also contends that Plaintiff fails to plead a

4    sufficient factual basis for her claim that it failed to provide

5    accurate wage statements.  It claims that Plaintiff does not allege

6    what was wrong with her wage statements.

7         This argument is unavailing.  Plaintiff alleges that she was

8    not compensated for overtime or premiums for meal and rest breaks

9    that she did not receive.  She does not contend that her wage

10   statements contained other errors.  Thus, it is clear how her wage

11   statements are alleged to be inaccurate.  Luxottica's motion to

12   dismiss this claim is denied.

13        C.   Claims under PAGA and for Failure to Maintain Employee
               Time Records
14

15        Luxottica asserts that Plaintiff's PAGA claim fails because

16   she alleged facts demonstrating that she has not exhausted her

     administrative remedies.  Luxottica contends that Plaintiff's claim
17
     for a failure to maintain employee time records likewise fails
18
     because it is entirely dependant on her PAGA claim.
19
          Under the PAGA, an "aggrieved employee or representative shall
20
     give written notice by certified mail to the Labor and Workforce
21
     Development Agency and the employer of the specific provisions of
22
     this code alleged to have been violated, including the facts and
23
     theories to support the alleged violation."  Cal. Lab. Code
24
     § 2699.3(a)(1).  If the Labor and Workforce Development Agency
25
     (LWDA) intends to investigate the employee's charge, it must inform
26
     the employer and employee within thirty-three calendar days.  Id.
27
     § 2699.3(a)(2)(B).  If the LWDA fails to do so or if it informs the
28

                                   12

United States District Court
For the Northern District of California

1  employer and employee that it declines to investigate, the employee

2  may bring a civil action.  Id. § 2699.3(a)(2)(A).  A civil action

3  "shall commence only after" these requirements are met.  Id.

4  § 2699.3(a).

5      Here, Plaintiff allegedly gave notice of her claims to the

6  LWDA on May 12, 2011.  She filed her lawsuit the same day.

7  Plaintiff does not dispute that she did not satisfy the

8  prerequisites for her PAGA claim, but instead argues that "the

9  passage of time has already mooted" this issue.  Opp'n at 11 n.2.

10  This is incorrect.  Because she brought her PAGA claim without

11  satisfying the statute's requirements, she is not entitled to

12  litigate this claim as of May 12, 2011, the date her complaint was

13  filed.

14      Accordingly, the Court grants Luxottica's motion to dismiss

15  Plaintiff's PAGA claim.  Because Plaintiff does not dispute that

16  her claim for a failure to maintain employee records is entirely

17  dependant on her PAGA claim, that claim is likewise dismissed.  In

18  any amended complaint, to satisfy the PAGA's requirements,

19  Plaintiff must plead that the thirty-three day deadline passed

20  without any notice from the LWDA.

21      D.    Failure to Compensate for All Hours Worked

22      Luxottica asserts that Plaintiff's claim that it failed to

23  compensate her for all hours worked is not plead sufficiently.

24  Specifically, Luxottica complains that it is not certain as to

25  which putative class members this claim pertains or Plaintiff's

26  theories of liability.

27      Plaintiff alleges that Luxottica's employees are required to

28  work off-the-clock.  Specifically, Luxottica allegedly requires

employees, after they clock out, "to complete tasks such as helping customers and closing the retail locations where they work." Compl. ¶ 42.  Employees whom Luxottica allegedly misclassified as exempt from overtime pay are required to do the same, and therefore also do not receive compensation for all hours worked.  These allegations suggest that non-exempt and exempt employees are not compensated for all hours worked.

However, Luxottica is correct that the theory behind Plaintiff's claim is not apparent.  Plaintiff identifies numerous statutes, including those pertaining to the minimum wage, overtime pay and maximum work hours.  Plaintiff does not clarify the legal basis for her cause of action in her opposition.  Plaintiff cites the definition of "hours worked" in <u>Morillion v. Royal Packing Co.</u>, 22 Cal. 4th 575 (2000).  Although <u>Morillion</u> defines that phrase, it does not create a cause of action under the Labor Code for a failure to pay for hours worked.

Plaintiff's claim for Luxottica's alleged failure to compensate for hours worked is dismissed.  In any amended complaint, Plaintiff must identify the legal basis for the claim, and facts indicating she is entitled to relief.

E.   Claim for Waiting Time Penalties

Luxottica asserts that Plaintiff's claim for waiting time penalties is barred by a settlement that she entered into with it in proceedings before the Labor Commissioner.  Luxottica also argues that Plaintiff's allegations are not sufficient to state a claim.  Because Plaintiff did not respond to these arguments, this claim is dismissed without leave to amend.

F.   Claim for "Misclassification as Exempt"

Luxottica asserts that Plaintiff's claim that she was misclassified is not sufficiently plead.  As with her other claims, Plaintiff pleads very little with respect to this claim.  However, if true, the facts would support her claim that she was misclassified.

Accordingly, Luxottica's motion to dismiss this claim is denied.

G.   UCL Claim

Luxottica asserts that Plaintiff's UCL claim derives from her other claims and must be dismissed to the extent she fails to state those other claims.  Plaintiff did not respond to this argument.  Accordingly, Plaintiff's UCL claim is dismissed to the extent it is based on claims she has not stated.  As it stands, Plaintiff only states claims for Luxottica's alleged failure to provide meal and rest breaks and accurate wage statements.

III. Motions to Strike

In the purported class action, Luxottica moves to strike Plaintiff's requests for injunctive relief, an accounting, punitive damages, and penalties pursuant to the PAGA and California Labor Code sections 203, 556, 551, 552, 1194.2 and 2802.  Plaintiff did not respond to this motion.  Accordingly, Luxottica's motion to strike in the purported class action is granted.

In the individual action, Luxottica moves to strike Plaintiff's references to Austria and Chen with regard to her CFRA claim.  Because Plaintiff did not respond to the motion, it is also granted.

CONCLUSION

For the foregoing reasons, the Court DENIES Luxottica's motions to compel arbitration; GRANTS in part Luxottica's motion to dismiss in the 11-2889 purported class action, and DENIES it in part; GRANTS Luxottica's motion to dismiss in the 11-3168 individual action and GRANTS Luxottica's motions to strike. Plaintiff's claims are dismissed and her complaints are stricken as follows:

1.  Plaintiff's PAGA claim is dismissed because she did not exhaust her administrative remedies at the time she filed this lawsuit. Because she did not dispute that her claim for a failure to maintain employee records derives from her PAGA claim, that claim is also dismissed. In any amended pleading, Plaintiff must plead that the PAGA's thirty-three day deadline passed without any notice from the LWDA that it intended to investigate her claims.

2.  Plaintiff's claim for Luxottica's alleged failure to compensate her for hours worked is dismissed because she did not identify the legal basis for this claim. In any amended pleading, Plaintiff must allege the legal basis for this claim and facts sufficient to support relief.

3.  Because Plaintiff did not respond to Luxottica's argument that her claim for waiting time penalties is barred by her settlement with it, overseen by the Labor Commissioner, the claim is dismissed without leave to amend.

4.  Plaintiff's UCL claim is dismissed to the extent it is based on claims that she has not stated.

United States District Court
For the Northern District of California

16

United States District Court
For the Northern District of California

5.   Because she did not oppose Luxottica's motion, Plaintiff's CFRA and wrongful termination claims are dismissed.  These claims are dismissed with leave to amend to rectify the deficiencies Luxottica identified in its motion to dismiss.

6.   Plaintiff's references to Austria and Chen in the context of her CFRA claim are stricken because she did not respond to Luxottica's motion to strike them.

7.   Plaintiff's requests for injunctive relief, an accounting, punitive damages, and penalties pursuant to the PAGA and California Labor Code sections 203, 556, 551, 552, 1194.2 and 2802 are stricken because she did not respond to Luxottica's motion to strike them.

The Court consolidates the 11-2889 and 11-3168 cases.  Fed. R. Civ. P. 42(a).  Within fourteen days of the date of this Order, Plaintiff shall file a consolidated amended complaint that comports with the Court's rulings.  Luxottica shall answer or move to dismiss Plaintiff's amended pleading twenty-one days after it is filed.  If Luxottica files a motion to dismiss, it shall be noticed for hearing on November 17, 2011 at 2:00 p.m.  All future filings shall be filed in the 11-2889 case, the lowest numbered of Plaintiff's two lawsuits.  The Clerk shall close the file on the 11-3168 case.

As noted above, neither Austria and Chen appear to have been served.  If Plaintiff intends to pursue her individual claims against them, she shall serve them with process, including the original complaint and this Order, by October 25, 2011, which is 120-days after Luxottica removed the 11-3168 case to federal court.

1   Vasquez v. N. Cnty. Transit Dist., 292 F.3d 1049, 1053 (9th Cir.

2   2002); Remy v. HDR Eng'g, 2005 WL 1925902, at *2 (E.D. Cal.).

3   Further, Plaintiff must allege a jurisdictional basis for her

4   claims against Austria and Chen.  Civ. L.R. 3-5(a).  Because

5   Austria and Chen are California citizens and jurisdiction presently

6   exists only pursuant to 28 U.S.C. § 1332, supplemental jurisdiction

7   may not be appropriate.  See 28 U.S.C. § 1367(b).

8        The case management conference set for September 20, 2011 is

9   continued to November 17, 2011 at 2:00 p.m.

10        IT IS SO ORDERED.

11

12  Dated: 8/22/2011

13                                   CLAUDIA WILKEN
                                     United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28